## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| PHILLIP FONDREN, | ] |
| | ] |
| Petitioner, | ] |
| | ] |
| v. | ]    CIVIL ACTION NO. 08-SLB-RRA-2089-E |
| | ] |
| COMMISSIONER RICHARD ALLEN, | ] |
| et al., | ] |
| | ] |
| Respondents. | ] |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a petition for a writ of habeas corpus brought by a person in custody under a judgment of a court of the State of Alabama.  28 U.S.C. § 2254.  The petitioner, Phillip Fondren, was convicted on March 7, 2003, in the Circuit Court of Calhoun County, of murder made capital by using a deadly weapon fired from a vehicle, in violation of Ala. Code § 13A-5-40(a)(18).[1]  He was sentenced to life imprisonment without the possibility of parole.

---

[1]        The facts adduced at trial indicate the following: On December 7, 2001, after having heard that his wife had had sexual relations , perhaps involuntarily, with the victim before she and Fondren had married, Fondren and his wife were at a local gas station when she saw the victim. When he determined the source of his wife's obvious discomfort, Fondren decided to pursue the victim.  As the victim left the gas station, Fondren, too, pulled out of the gas station and began to follow the victim. Fondren tailgated the victim at 80 m.p.h., flashing his headlights trying to encourage the victim to pull over to the side of the road, to no avail.  Fondren then took his wife home and returned to the street where he had seen the victim turn off from the tailgating incident.  Fondren found the victim at the victim's uncle's house and pulled up to the end of the driveway.  Yelling and arguing ensured, with the victim standing at the end of his uncle's driveway, Fondren in his truck parked at the end of the driveway in the street, and the victim's girlfriend looking on. Fondren tried to

The Alabama Court of Criminal Appeals affirmed Fondren's conviction on April 23, 2004. *Fondren v. State*, 919 So. 2d 1235 (Ala. Crim. App. 2004)(table). Fondren's application for rehearing was denied on May 28, 2004. The Alabama Supreme Court denied his petition for a writ of certiorari on August 13, 2004, and issued a certificate of judgment the same day. *Fondren v. State*, 920 So. 2d 1141 (Ala. 2004)(table).

On August 11, 2005, Fondren filed a Rule 32 petition in the Circuit Court of Calhoun County. After conducting an evidentiary hearing on November 20, 2006, the trial court entered an order denying the petition. On appeal, Fondren raised the same claims he had presented to the trial court. The Alabama Court of Criminal Appeals affirmed the denial on the petition in a memorandum opinion released on October 26, 2007. *Fondren v. State*, 19 So.3d 260 (Ala. Crim. App. 2007)(table).

On November 30, 2007, the Alabama Court of Criminal Appeals overruled Fondren's application for rehearing. The Alabama Supreme Court denied his petition for a writ of certiorari on August 8, 2008, and issued a certificate of judgment the same day. *Ex parte Fondren*, 34 So.3d 737 (Ala. 2008)(table).

---

> convince the victim to go someplace else to settle their differences, but the victim refused. Fondren drove away, but returned, and the argument continued. The victim approached Fondren's car in an apparently menacing fashion, and Fondren shot the victim in the abdomen with a rifle he kept in the floorboard of the truck during deer hunting season. The victim died from the gunshot wound. Fondren claimed that he thought he saw the victim drawing a weapon from the waistband of his pants. The victim's girlfriend testified that during the altercation the victim had retrieved from under the seat of his car a "little metal bar," approximately one foot long, with "a little bit of rubber on it" and maybe a handle. (R. 663-64.)

*Fondren v. State*, 919 So. 2d 1235 (Ala. Crim. App. 2004)(table), Court Document 4-9 at 1-2.

Fondren filed a petition for a writ of habeas corpus in this court on November 6, 2008.  In support of his petition, Fondren claims that he received ineffective assistance of counsel at trial because counsel:

A.  failed to request a proper jury charge on capital murder for shooting from within a vehicle when provocation manslaughter was properly asserted and failed to properly object to the improper jury charge on capital murder which did not include the necessary element of provoked heat of passion;

B1. failed to retain an appropriate expert to develop and present ballistics evidence that would have shown that the passenger side door of Fondren's truck was open at the time of the shooting;

B2. consulted and retained a medical and forensic expert who was not only unqualifed, but who had falsified his credentials;

B3. failed to interview state law enforcement officers prior to or during trial;

B4. failed to consult an expert on the physical and psychological effects of violent encounters in order to account for Fondren's incomplete memory of the events surrounding the shooting;

C1. failed to make the proper requests to strike for cause, jurors who stated in the questionnaire that they would believe "a law enforcement officer's testimony should be automatically believed or given greater weight than other witnesses simply because he (she) is an officer";

C2. failed to make the proper request to strike for cause, a juror employed by the funeral home that handled the burial of the victim, who drove the hearse carrying the victim's casket to the grave site and directed the pallbearers to put the victim's casket in the ground;

C3. failed to make the proper request to strike for cause, jurors who stated in the questionnaire that they would be "less tolerant or understanding" of a person using alcohol;

C4. failed to review the jury questionnaires and adequately follow up when jurors failed to answer truthfully during *voir dire*;

D. failed to object when the prosecutor knowingly and in bad faith argued facts not in evidence, gave his personal opinions, improperly appealed to emotion, and had a juror participate in closing argument by demonstrating the shooting;

E. failed to properly object to the prosecutor's improper use of subpoenas and failed to exhaust all available remedies by filing a writ of mandamus regarding the improper use of subpoenas;

F. had a conflict of interest created during the representation of Stanley Fondren, Deidra Fondren, and Julie Fondren; and

G. failed to object to the state's use of a juror to demonstrate how the shooting might have occurred.

In response to the court's order to show cause, the respondents have filed an answer and a supplemental answer. By order of the court, the parties were advised that the respondents' answer and supplemental answer would be treated as a motion for summary dismissal pursuant to Rule 8(a) of the Rules Governing Section 2254 Cases. In response, Fondren has filed a traverse and a supplemental traverse.

Each of the petitioner's claims implicate the constitutional effectiveness of his trial attorney. The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668 (1984). The Court elaborated:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

4

Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.  "Because the [petitioner] must prove both deficiency and prejudice, a [petitioner's] failure to prove either will be fatal to his claim." *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Under the *Strickland* test, the petitioner must initially show that counsel's representation fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  "While it need not be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys representing criminal defendants.'" *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993)(*quoting Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir.)(en banc), *cert. denied*, 502 U.S. 835 (1991)).  In making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  The effectiveness or ineffectiveness of counsel must be evaluated by consideration of the totality of the circumstances.  *Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir. 1983), *cert. denied,* 467 U.S. 1219 (1984).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice.  Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice.  *Strickland,* 466 U.S. at 691-92.  In order to establish actual prejudice, a petitioner must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." *Armstead v. Scott,* 37 F.3d

5

202, 207 (5th Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  *Strickland,* 466 U.S. at 694.  Furthermore, in addition to showing that the outcome would have been different, a petitioner must prove that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair." *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994)(*citing Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993)).  "In other words, a 'counsel's unprofessional errors [must] so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict suspect.'" *Weekley v. Jones*, 56 F.3d 889, 897 (8th Cir. 1995)(*quoting Fretwell*, 113 S. Ct. at 842).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell*, 113 S. Ct. at 844.

Each of the petitioner's ineffective assistance of counsel claims was raised in his Rule 32 petition and denied on the merits.  Because Fondren filed this petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), amending § 2254, the claims must be evaluated according to the standards as amended by the Act.  *Lindh v. Murphy*, 117 S. Ct. 2059, 2063 (1997).  Under the AEDPA, a petitioner is entitled to relief on a federal claim only if he shows that the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or that the court's rulings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).  *See also Williams v. Taylor*,  529 U.S. 362, 404 (2000); *Brown v. Payton*, 544 U.S. 133

6

(2005); *Miller-El v. Dretke*, 545 U.S. 231 (2005); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  "Moreover, a state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005) (*citing* 28 U.S.C. § 2254(e)(1)).

A state court's adjudication of a claim will be sustained under § 2254(d)(1) unless it is "contrary to" clearly established, controlling Supreme Court precedent, or it is an "unreasonable application" of that law.  These are two different inquiries, not to be confused, nor conflated, as the Supreme Court explained in *Williams v. Taylor*, 529 U.S. 362 (2000), saying:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States*," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-405 (emphases in original).  The statute limits the source from which "clearly established Federal law" can be drawn to "holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412; *see Jones v. Jamrog*, 414 F.3d 585 (6th Cir. 2005); *Sevencan v. Herbert*, 342 F.3d 69 (2nd Cir. 2003); *Warren v. Kyler*, 422 F.3d 132, 138 (3rd Cir. 2005) ("[W]e do not consider those holdings as they exist today, but rather as they existed as of the time of the relevant state-court decision.") (internal quotation marks and citation omitted).

A state-court determination can be "contrary to" clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Likewise, a state-court determination can be an "unreasonable application" of clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id*. at 407; *see also Putman v. Head*, 268 F.3d 1223 (11ᵗʰ Cir. 2001). Whether a particular application of Supreme Court precedent is "reasonable" turns not on subjective factors, but on whether the application of Supreme Court precedent at issue was "objectively unreasonable." The question is not whether the state court "correctly" decided the issue, but whether its determination was "reasonable," *even if incorrect*. *See Bell v. Cone*, 535 U.S. 685, 694 (2002).

8

1.  **THE CLAIMS**

**A.  Counsel failed to request a proper jury charge on capital murder for shooting from within a vehicle when provocation manslaughter was properly asserted and failed to properly object to the improper jury charge on capital murder which did not include the necessary element of provoked heat of passion.**

Fondren argues that the trial court's failure to instruct or charge the jury that they were required to consider provoked heat of passion was error under the Alabama Supreme Court's ruling in *Ex parte McGriff*, 908 So. 2d 1024 (Ala. 2004), and that counsel were ineffective for failing to request a "proper charge" or object to the "improper charge."

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

> Fondren claims that he was denied the effective assistance of counsel for numerous reasons.  In its order denying Fondren's petition, the circuit court stated:
>
> > A. The claim that trial counsel were ineffective for failing to request a jury instruction that included provoked heat of passion as an element of the capital offense.
> >
> > In claim III.A of his consolidated petition, pages 12-13, Fondren, citing as authority *Ex parte McGriff*, 908 So. 2d 1024 (Ala. 2004), contends that his trial counsel were ineffective for failing to request a jury charge and for failing to object to the court's failure to give a jury charge that included provoked heat of passion as an element of the capital offense of murder while firing a deadly weapon from within a vehicle.
> >
> > Fondren did not establish that counsel's failure to request that the Court's capital murder jury instruction include a negative heat of passion element constitutes ineffective assistance of counsel. First, this Court notes that the Alabama Pattern Jury Instructions regarding Section 13A-5-40(a) does not list an absence of heat of passion element. Additionally, *Ex parte McGriff*, 908 So. 2d 1024 (Ala. 2004), was issued after

9

Fondren's conviction.  As such, the Court finds that trial counsels' failure to request a jury instruction with a negative heat of passion element was not objectively unreasonable. *Woods v. State*, 957 So. 2d 492 (Ala. Crim. App. 2006), *overruled on other grounds, Ex parte Woods*, 957 So. 2d 533 (Ala. 2006)(holding that counsel cannot be ineffective for failing to forecast changes in the law); *Inmin v. State*, 654 So. 2d 86, 88 (Ala. Crim. App. 1995).  Furthermore, the Court finds that Fondren has not established a reasonable probability that, had such an instruction been included in the Court's capital murder jury charge, the outcome of his trial would have been different. The Court thoroughly instructed the jury regarding provocation manslaughter. (R. 1444-47.) The jury was well aware that if Fondren had acted in the heat of passion as a result of adequate provocation then it could not convict him of capital murder. As such, Fondren has not established that the failure to include in the capital murder jury charge an absence of heat of passion element prejudiced him under *Strickland v. Washington*, 466 U.S. 668 (1984).

Finally, the Court finds that a heat of passion instruction was not supported by any evidence presented at trial. The facts presented at trial established that Fondren was the first aggressor.  He chased the victim to the victim's uncle's house. (R. 612-14.) He drove past the victim at his uncle's house. (R. 621-622, 627.) He then returned to the uncle's house and shot the victim. (R. 629.)  There was no evidence that the victim was armed, that he was about to commit a serious felony, or that he was about to cause serious physical injury to Fondren.

Clearly, Fondren was not provoked by Marcus Pugh. He was the first aggressor who provoked Mr. Pugh then shot him from the cover of his truck.  Under no theory of the facts presented at trial or of the facts established in the Rule 32 hearing was Fondren sufficiently provoked to entitle him to a heat of passion jury instruction. As such, counsel could not have been ineffective for failing to request a negative heat of passion jury instruction because Fondren was not entitled to one.

Finally, Fondren was not prejudiced by counsels' failure to request a negative heat of passion jury instruction. As stated above, Fondren was the first aggressor who followed the victim to his uncle's house. Fondren left the uncle's house then

10

returned and shot Pugh. At all times, Fondren had the ability to end the confrontation that he started and failed to do so. From this evidence, there is no possibility, much less a reasonable probability, that the jury would not have convicted him of capital murder.

In sum, because Fondren did not meet his burden of establishing deficient performance or prejudice under *Strickland*, this the Court finds that this claim is without merit. Consequently, it is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 5-7.

The petitioner first argues that the Alabama court's decision was "an unreasonable interpretation and application of the law because *Ex parte McGriff* did not change the law." *Petitioner's Traverse*, Court Document 13 at 7.  However, in order for this court to review this claim, Fondren must show that the state court's adjudication of this claim involved an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Thus, to the extent that Fondren argues that the state court's interpretation and application of *Ex parte McGriff,* an Alabama Supreme Court case, was unreasonable,  he has not met the standard for having the claim reviewed in this court.

Instead, Fondren may show that the state court's determination was an "unreasonable application" of clearly established Supreme Court precedent in either of two ways:

First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

11

*Id*. at 407; *see also Putman v. Head*, 268 F.3d 1223 (11ᵗʰ Cir. 2001).

Fondren contends that the state "court's failure to find counsel ineffective under *Strickland* for failure to request a proper jury charge or object to an improper charge was an unreasonable application of federal law." *Petitioner's Traverse*, Court Document 13 at 12. He adds that it was "objectively unreasonable for defense counsel not to have spoken up and either requested the proper charge or objected to the improper charge." *Id*.  However, he has made no argument that state court's finding that he had not established that he was prejudiced by counsel's performance was an unreasonable application of *Strickland*.

The state court specifically found that Fondren had not established that he was prejudiced by counsel's failure to object to the charge or to request a different charge:

> Furthermore, the Court finds that Fondren has not established a reasonable probability that, had such an instruction been included in the Court's capital murder jury charge, the outcome of his trial would have been different. The Court thoroughly instructed the jury regarding provocation manslaughter. (R. 1444-47.) The jury was well aware that if Fondren had acted in the heat of passion as a result of adequate provocation then it could not convict him of capital murder. As such, Fondren has not established that the failure to include in the capital murder jury charge an absence of heat of passion element prejudiced him under *Strickland v. Washington*, 466 U.S. 668 (1984).
>
> . . .
>
> Finally, Fondren was not prejudiced by counsels' failure to request a negative heat of passion jury instruction. As stated above, Fondren was the first aggressor who followed the victim to his uncle's house. Fondren left the uncle's house then returned and shot Pugh. At all times, Fondren had the ability to end the confrontation that he started and failed to do so. From this evidence, there is no possibility, much less a reasonable probability, that the jury would not have convicted him of capital murder.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 6-7.  There is nothing in the record to support a finding that the court's finding that Fondren had not established prejudice under

12

*Strickland* "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Thus, this claim is due to be DISMISSED.[2]

### B1.  Counsel failed to retain an appropriate expert to develop and present ballistics evidence that would have shown that the passenger side door of Fondren's truck was open at the time of the shooting.

Fondren contends that trial counsel were "deficient for failing to consult an appropriate expert when the defense was self-defense and provocation manslaughter and the appropriate expert could have assisted in properly developing and presenting those theories." *Petition*, Court Document 1 at 14-15.  He further claims that "counsel made an inadequate pass at attempting to develop and present evidence that the passenger side door of Mr. Fondren's truck was open at the time of the shooting even though it was clear that this was critical to the theories of self-defense and provocation manslaughter, as well as necessary in countering the State's theory of the shooting," and that a "properly qualified expert would have assisted counsel in presenting evidence supporting the position that the door must have been open."  *Id.* at 15.

---

[2]  Furthermore, it is clear that Fondren has not met the *Strickland* requirement of showing that he was prejudiced by counsel's failure to request a different jury charge or object to the charge that was given.  There is nothing in the record to indicate that had the court charged differently, there is even a slight chance that the outcome of his trial would have been different.

13

When Fondren raised the same claim on appeal from the denial of his Rule 32 petition, the Alabama Court of Criminal Appeals affirmed the denial of the claim, finding as follows:

> 1. The claim that trial counsel were ineffective for failing to obtain a ballistics expert.
>
> In claim III.C.1 on pages 16-19 of his consolidated petition, Fondren contends that trial counsel were ineffective for failing to retain the services of a ballistics expert to assist counsel in developing the defense's theory of self-defense by developing evidence to support the theory that the victim opened the passenger side door of Fondren's truck prior to the shooting.
>
> The Court finds that Fondren failed to present evidence at the Rule 32 hearing that would establish that counsel were ineffective for failing to elicit the aid of an expert to support a theory that the victim had opened the door of Fondren's truck prior to the shooting.  In the Rule 32 hearing, Fondren presented the testimony of John Kilbourn.  Kilbourn testified that, in his opinion, the passenger-side door of Fondren's truck must have been open when Fondren shot Pugh. Kilbourn, however, did not specifically state how he came to that opinion. Furthermore, Kilbourn could not have determined that Fondren did not open the door himself. In sum, Kilbourn's testimony was insufficient to establish that there is a reasonable probability that, had counsel retained an expert in firearms, the outcome of his trial would have been different.
>
> Furthermore, the Court finds that Kilbourn's opinion was not based on the facts of this case.  Part of his opinion that the door must have been open when Pugh was shot was based on the trajectory of the bullet through Pugh's body. Kilbourn, however, did not take into account the fact that Pugh moved his body - flinched - just prior to being shot. The Court finds that Kilbourn's failure to take into account the fact that Pugh moved prior to being shot discredits his opinion that the door must have been opened based on the trajectory of the bullet through Pugh.

Furthermore, trial counsel testified that they independently examined the crime scene. During this examination, they used measurements and strings to recreate the bullets trajectory at the crime scene. From that examination, counsel determined that it was possible for the truck door to be closed when the shot was fired. Fondren failed to produce any evidence that would establish that counsels' investigation into the trajectory of the bullet and investigation into the open door theory was unreasonable. He also failed to establish that counsel unreasonably relied on their investigation of this theory in determining that a firearms expert would not be necessary or helpful. Consequently, Fondren did not establish deficient performance under *Strickland*.

Additionally, Fondren failed to present any evidence at the Rule 32 hearing that would establish that, had trial counsel retained a ballistics or a firearms expert, the outcome of his trial would have been different. Consequently, Fondren did not meet his burden of proof.

In short, Fondren failed to produce evidence at the Rule 32 hearing that would establish that trial counsels' decision not to retain a ballistics or a firearms expert was objectively unreasonable or that he was prejudiced under *Strickland*. Consequently, he did not meet his burden of proof, and this claim is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 8-10.

Fondren maintains that the state court's decision was an unreasonable application of federal law. In concluding that counsel was not deficient for failing to obtain a ballistics expert, the court found that the testimony of John Kilbourn would not have been particularly helpful to Fondren in proving self-defense, since he never specifically indicated how he arrived at his conclusion that the door must have been open, he had no way of knowing that Fondren was not the person who opened the door, and he failed to consider that the victim moved immediately before he was shot. Then. after also considering that counsel's own

15

investigation, in which they used measurements and strings to recreate the trajectory of the bullet, had determined that it was possible for the truck door to have been closed when the victim was shot, the court found that Fondren had not established that counsel's performance was objectively unreasonable. The court concluded that Fondren had offered nothing, including the testimony of Kilborn, that established that if counsel had hired a ballistics expert, the outcome of his trial would have been any different. Clearly, the state court's determination that Fondren failed to establish that counsel's performance was deficient or that he was prejudiced by counsel's performance cannot be said to have been objectively unreasonable. Therefore, this claim is due to be DISMISSED.

### B2.  Counsel consulted and retained a medical and forensic expert who was not only unqualifed, but who had falsified his credentials.

Fondren alleges that counsel were ineffective for consulting and retaining Bob Madrid as an expert in the area of forensics, because Madrid had falsified his credentials. He maintains that counsel's failure to retain an appropriate expert rendered the verdict unreliable in that an appropriate expert would have disproved the state's theory of the shooting.

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

3. The claim that trial counsel were ineffective for consulting and retaining an unqualified expert.

In claim III.C.3 on pages 21-22 of his consolidated petition, Fondren contends that trial counsel were ineffective for retaining the services of Bob Madrid, of Bob Parker & Associates, Inc., to investigate the case for the defense. This claim is without merit and denied. Fondren failed to present any

16

evidence at the Rule 32 hearing that would establish that trial counsel hired or relied on Bob Madrid during their preparation for Fondren's case. On the contrary, both attorneys testified that they did not hire Bob Madrid to investigate Fondren's case; they hired Bob Parker - a local investigator. Both attorneys testified that, other than helping Bob Parker take measurements, Madrid did not work on Fondren's case and they did not rely on any work performed by Madrid. Both attorneys also testified that they obtained the assistance of an independent pathologist, David Dawson. Finally, Fondren's father's testimony regarding conversations he had with trial counsel indicates that trial counsel did not hire or rely on Bob Madrid.

Because counsel did not hire or rely on Madrid in this case and because they obtained the assistance of an independent pathologist, this Court finds that Fondren has not, and cannot, establish deficient performance or prejudice under *Strickland*. This claim is without merit and is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 11-12.

The state court clearly found that Madrid was not hired by or relied on by counsel; that Madrid's participation in the case was minimal at best; that Bob Parker was in fact the lead investigator hired by counsel; and that counsel also obtained the assistance of an independent pathologist. Fondren does not dispute these factual findings. Based upon these facts there is nothing to support an argument that the state court's finding that Fondren had not established deficient performance or prejudice under *Strickland* "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

**B3.  Counsel failed to interview state law enforcement officers prior to or during trial.**

Fondren claims that counsel were constitutionally ineffective because they should have investigated or had an investigator and/or the appropriate expert interview State law enforcement officers and other testifying and non-testifying witnesses associated with the state.  He asserts that such interviews would have been invaluable in properly preparing his theory of the shooting and in casting doubt on the state's theory.

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

> 5. The claim that trial counsel were ineffective for failing to interview law enforcement officers prior to or during trial.
>
> In claim III.C.5 on pages 23-24 of his consolidated petition, Fondren contends that trial counsel were ineffective for not interviewing, or having an investigator or expert interview, all testifying and non-testifying law enforcement officers associated with the State's case. This claim is denied.
>
> Fondren did not present any evidence that would support this claim during the Rule 32 hearing.  Fondren's failure to present any evidence supporting this claim constitutes an abandonment of this issue. *Clemons v. State*, [Ms. CR-01-1355, August 29, 2003] So. 2d (Ala. Crim. App. 2003) ('Because the factual averments within this claim were not supported by evidence introduced at the evidentiary hearing, this claim has been abandoned by [petitioner].'); *Payne v. State*, 791 So. 2d 383, 399 (Ala. Crim. App. 1999). Because he abandoned this issue, he is not entitled to any relief, and this claim is denied.
>
> In the alternative, Fondren did not present any evidence at the Rule 32 hearing that would establish what trial counsel would have learned had they interviewed law enforcement officers. Consequently, he did not present any evidence that would establish that, had trial counsel interviewed law

> enforcement officers, they would have obtained information that could have been used at trial. Without presenting such evidence, Fondren failed to establish prejudice under *Strickland*. This claim is, therefore, without merit and is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at page 13.

The state court first found that Fondren was not entitled to relief on this claim because he had abandoned it by failing to present any evidence to support the claim at the hearing on his Rule 32 petition.  The court further found that in light of his failure to produce any evidence to support the claim, he had not established prejudice under *Strickland*.  There is nothing in the record to support a finding that the court's finding that Fondren had not established prejudice under *Strickland* "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Thus, this claim is due to be DISMISSED.

**B4.  Counsel failed to consult an expert on the physical and psychological effects of violent encounters in order to account for Fondren's incomplete memory of the events surrounding the shooting.**

Fondren alleges that counsel should have hired an expert to testify that Fondren's inability to remember whether or not the truck door was open when he shot the victim was "attributable to the fact that his attention was divided and, in the heat of the moment, he focused on stimuli that may have been more salient to him (i.e., the victim attempting to pull out what Fondren thought was a weapon)," and that he might not have been able to

remember whether the door was open or closed because "it never registered on his brain at the time because he might have been so focused on the hand of the person approaching, trying to determine if he had a weapon and was about to fire it, that he didn't notice other details around him such as whether the car or truck door was opened or closed." *Petition*, Court Document 1 at 20-21.  He maintains that as a result of counsel's failure to call such an expert, the state was able to use the fact that he was not able to remember whether the door was opened or closed to diminish his credibility.

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

> 6. The claim that trial counsel were ineffective for failing to consult an expert on the physical and psychological effects of violent encounters.

> In claim III.C.6 on pages 24-26 of his consolidated petition, Fondren contends that trial counsel were ineffective for failing to call an expert to testify that Fondren was experiencing cognitive dissonance and, therefore, was unable to remember if the passenger-side door of his truck was open or closed at the time of the shooting. This claim is denied.

> In an attempt to establish this claim, Fondren presented the testimony of Dr. Marian Rosenzweig, a psychologist. Dr. Rosenzweig testified generally about the phenomenon of weapons focus. She testified that a person confronted by a weapon may not remember details other than the weapon. Dr. Rosenzweig, however, did not interview Fondren and only reviewed two pages of the trial transcript and the youthful offender report. She could not have determined that Fondren himself suffered from weapons focus phenomenon. Instead, she merely testified about the phenomenon generally. As such, Fondren failed to establish that trial counsel could have obtained an expert who would have testified that he suffered from weapons focus phenomenon. He also did not establish that weapons focus phenomenon resulted in his inability to

remember whether the door to his truck was opened or closed. As such, he did not present sufficient evidence to establish that trial counsels' failure to obtain an expert on memory loss was objectively deficient or prejudicial under *Strickland*.

Furthermore, the Court finds that trial counsels' failure to present testimony similar to that of Dr. Rosenzweig had no effect on the jury. As stated above, Dr. Rosenzweig testified generally about weapons focus phenomenon. She could not state with any reasonable certainty that Fondren suffered from this phenomenon. Had trial counsel presented similar testimony, the result of the trial would have been the same. Consequently, Fondren has not established a reasonable probability that such testimony would have altered the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Therefore, this claim is without merit and is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 13-15.

The state court found that general testimony from an expert that "weapon focus phenomenon" exists would have added nothing to Fondren's defense since there was no evidence that Fondren suffered from the phenomenon or even if he did, that there was no evidence that the phenomenon resulted in his inability to remember whether the truck door was open or shut.  There is nothing in the record to establish that the state court's finding that general testimony regarding "weapons focus phenomenon" was insufficient to support a finding that counsel were deficient or that the failure to present such testimony resulted in prejudice under *Strickland* "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Thus, this claim is due to be DISMISSED.

21

**C1.  Counsel failed to make the proper requests to strike for cause, jurors who stated in the questionnaire that they would believe "a law enforcement officer's testimony should be automatically believed or given greater weight than other witnesses simply because he (she) is an officer."**

Fondren asserts that counsel were ineffective for failing to move to strike for cause twelve prospective jurors who stated in the jury questionnaire that they would believe a law enforcement officer's testimony over any other witness, simply because he is a law enforcement officer.[3]

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

> 1. The claim that counsel were ineffective for failing to adequately *voir dire* and move to strike for cause jurors who indicated in their questionnaires that they would give greater weight to the testimony of a law enforcement officer.
>
> In claim III.D.1 on pages 27-30 of his consolidated petition, Fondren contends that trial counsel were ineffective for failing to adequately question and have removed for cause those prospective jurors that indicated on their jury questionnaire that they 'believe[d] a law enforcement officer's testimony should be automatically believed or given greater weight than other witnesses simply because he (she) is an officer.' This claim is denied.
>
> Fondren did not present any evidence in the Rule 32 hearing that would establish this claim. First, trial counsel testified that he used a numbering system to determine whether he wanted a juror to remain on the jury. In that numbering

---

[3]  Of the twelve jurors mentioned by the petitioner, only one of them, Manuel Torres, actually served on the jury that convicted Fondren.  Although Doris Farr also indicated that she would believe a law enforcement officer's testimony over any other witness, simply because the witness was a law enforcement officer, she was an alternate juror and did not participate in the deliberations or have any part in the verdict.  *See Court Document 16-15* at p. 2 and *Court Document 16-29* at p. 70.

system, counsel stated that there might be a question that could disqualify a juror; however, if the juror answered favorably on other questions, counsel might strategically decide not to strike the juror.  Fondren did not ask counsel any questions relating to their decision not to strike any specific jurors and did not present any evidence that would establish that counsels' decision not to strike certain jurors for cause was anything other than a strategic decision based on favorable answers that made the juror very appealing to the defense.  Furthermore, he failed to present any evidence that would establish prejudice under *Strickland*. He did not establish that the jurors to which he complains could not have been rehabilitated.

Because Fondren failed to present evidence that would establish that counsels' performance was deficient or that he was prejudiced by the failure to move to strike for cause jurors that stated that they would believe law enforcement over lay witnesses, he did not meet his burden of proof.  Therefore, this claim is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 15-16.

The state court found that Fondren failed to establish that counsel's failure to strike the twelve prospective jurors for cause was deficient or that he was prejudiced by counsel's failure to strike the twelve for cause.  There is nothing in the record to establish that this finding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Thus, this claim is due to be DISMISSED.

**C2.  Counsel failed to make the proper request to strike for cause, a juror employed by the funeral home that handled the burial of the victim, who drove the hearse carrying the victim's casket to the grave site and directed the pallbearers to put the victim's casket in the ground.**

**and**

**C4. Counsel failed to review the jury questionnaires and adequately follow up when jurors failed to answer truthfully during *voir dire*.**

Fondren claims that counsel were ineffective for failing to follow up adequately when juror Martin Winters failed to answer truthfully during *voir dire*, and for failing to request to strike Winters for cause after he indicated that he worked as the funeral director for the funeral home that provided funeral services for the victim, and that he had driven the hearse carrying the victim's body to the funeral.

In denying these claims on the merits, the Alabama Court of Criminal Appeals found the following:

> 4. The claim that trial counsel were ineffective for failing to ask follow-up questions of a juror who was allegedly untruthful during *voir dire*.
>
> In claim III.D.4 on pages 34-35 of his consolidated petition, Fondren contends that trial counsel were ineffective for failing to ensure that jurors answered truthfully during *voir dire*. Fondren contends that, while on his questionnaire Juror Martin Winters indicated he was the funeral home director at the funeral home that conducted Mr. Pugh's funeral and that he attended the funeral, during *voir dire*, Juror Winters did not raise his hand when the prosecutor asked the entire jury panel if any of them knew anything about the facts of the case. This claim is denied.
>
> The Court finds that this claim is without merit. Juror Winters testified at the Rule 32 hearing that he informed the attorneys that he had worked at Pugh's funeral on the juror questionnaire.  He further testified that he informed trial counsel of this fact during *voir dire*, although this conversation may not have been transcribed.   Fondren's attorney Randy Brooks

24

testified that he knew that a juror had worked at Pugh's funeral. Based on this testimony, the Court finds that Winters was not untruthful during *voir dire* as Fondren claims. Therefore, this claim is without merit and denied.

In the alternative, the Court finds that this claim is without merit because Fondren did not establish prejudice under *Strickland*. Juror Winters testified that he had a limited role in Pugh's funeral, driving the hearse and directing pallbearers. He further testified the he did not learn any information about the case during the funeral. He then testified that working during Pugh's funeral had no effect on his deliberations as a juror and played no role in convicting Fondren. As such, Fondren did not and cannot establish that counsel were ineffective for failing to strike juror Winters. *See United States v. Martinez Salazar*, 528 U.S. 304 (2000) (holding that, so long as the jury that convicted the defendant is impartial, the constitutional guarantee of a fair trial has been met). Therefore, this claim is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 19-20.

The state court found that Fondren's claim that counsel was deficient for not following up on untruthful answers was unfounded because Juror Winters was not untruthful. The court further found that there was no prejudice from counsel's failure to strike Winters for cause since Winters testified at the evidentiary hearing on the Rule 32 petition that his participation in the funeral had no effect on his deliberations as a juror and played no role in the conviction. Clearly this finding cannot be found to have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Thus, these claims are due to be DISMISSED.

**C3.  Counsel failed to make the proper request to strike for cause, jurors who stated in the questionnaire that they would be "less tolerant or understanding" of a person using alcohol.**

Fondren claims that nine prospective jurors, two of whom actually served on the jury, stated on their jury questionnaires that they would be less tolerant or understanding of a person using alcohol.  He maintains that counsel were ineffective for failing to request further questioning of these potential jurors or to strike them for cause.

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

> 3. The claim that trial counsel were ineffective for failing to question further and strike for cause those jurors who indicated in their questionnaires that they would be less tolerant of a person using alcohol.
>
> In claim III.D.3 on pages 32-34 of his consolidated petition, Fondren contends that trial counsel were ineffective for failing to ask followup questions of and strike for cause those prospective jurors who indicated in their jury questionnaire that they would be "less tolerant or understanding" of a person using alcohol. This claim is denied.
>
> Fondren did not present any evidence that would support this claim during the Rule 32 hearing.  Fondren's failure to present any evidence supporting this claim constitutes an abandonment of this issue. *Clemons v. State*, [Ms. CR-01-1355, August 29, 2003] So. 2d (Ala. Crim. App. 2003) ('Because the factual averments within this claim were not supported by evidence introduced at the evidentiary hearing, this claim has been abandoned by [petitioner].'); *Payne v. State*, 791 So. 2d 383, 399 (Ala. Crim. App. 1999). Because he abandoned this issue , he is not entitled to any relief, and this claim is denied.
>
> In the alternative, Fondren did not present any evidence in the  Rule 32 hearing that would support this claim; therefore, he failed to meet his burden of proof. Trial counsel testified that

he used a numbering system to determine whether he wanted a juror to remain on the jury. In that numbering system, counsel stated that there might be a question that could disqualify a juror; however, if the juror answered favorably on other questions, counsel might strategically decide not to strike the juror. Fondren did not ask counsel any questions relating to their decision not to strike any specific jurors and did not present any evidence that would establish that counsels' decision not to strike certain jurors was anything other than a strategic decision based on favorable answers that made the juror very appealing to the defense. Fondren also failed to present any evidence that would establish that that decision was objectively unreasonable. Additionally, he did not present any evidence that would establish that the jurors were not qualified to serve on his jury. Furthermore, he failed to present any evidence that would establish prejudice under *Strickland*.

Because Fondren failed to present evidence that would establish that counsels' performance was deficient or that he was prejudiced by the failure to move to strike for cause jurors that stated that they would be less tolerate of a person using alcohol, he did not meet his burden of proof. Therefore, this claim is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 17-19.

In addition to finding that Fondren abandoned this claim by failing to present any evidence on the claim in the Rule 32 hearing, the state court found that Fondren had failed to establish that counsel's performance was deficient in light of the fact that there was no evidence that the two jurors who were selected to serve on the jury were not qualified and that there was no evidence that counsels' decision not to strike the jurors was anything other than strategic. The court further found no evidence to support a finding that Fondren was prejudiced by the presence of the two jurors on the jury. Fondren has offered nothing to indicate that the state court's decision on this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." This claim is due to be DISMISSED.

### D.  Counsel failed to object when the prosecutor knowingly and in bad faith argued facts not in evidence, gave his personal opinions, improperly appealed to emotion, and had a juror participate in closing argument by demonstrating the shooting.

Fondren contends that counsel were ineffective for failing to object to: (1) the state's mock recreation of the shooting during closing arguments; (2) the state's comment that Fondren was putting on a "fantasy" defense, making things up to "juke" the jury; (3) the state's comments designed to appeal to emotion and wrap the state in a cloak of credibility; and (4) the state's improper appeal for sympathy for the victim.

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

> F. The claim that trial counsel were ineffective for failing to object to statements made by the prosecutor.
>
> In claim III.F on pages 42-45 of his consolidated petition, Fondren contends that trial counsel were ineffective for failing to object to statements made by the prosecutor. Specifically, Fondren complains of counsels' failure to object to the following: (1) during closing arguments, the State presented a mock recreation of how it contended the shooting occurred, using a juror to assist; (2) stating that the defense was putting on a 'fantasy' defense, making it up and trying to 'juke' the jury; (3) making four comments 'designed to appeal to emotion and wrap the State in a cloak of credibility'; and (4) improperly appealing for sympathy. These claims are denied.

To the extent that Fondren alleges that trial counsel were ineffective for failing to object to the juror demonstration, this claim is addressed in section III.K below. As for the remainder of these claims, Fondren did not present evidence in support thereof during the Rule 32 hearing. Fondren's failure to present any evidence supporting these claims constitutes an abandonment of these issues. *Clemons v. State*, [Ms. CR-01-1355, August 29, 2003] So. 2d (Ala. Crim. App. 2003) ('Because the factual averments within this claim were not supported by evidence introduced at the evidentiary hearing, this claim has been abandoned by [petitioner].'); *Payne v. State*, 791 So. 2d 383, 399 (Ala. Crim. App. 1999). Because he abandoned this issue, he is not entitled to any relief, and this claim is denied.

In the alternative, Fondren did not ask trial counsel any questions relating to the prosecutor's arguments. As such, he did not establish that counsels' failure to object to the comments was anything other than a strategic decision, or that that decision was objectively unreasonable.  Consequently, Fondren did not meet his burden of proof, and this claim is denied. Ala. R. Crim. P. 32.3.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 25-26.

In addition to finding that Fondren abandoned this claim by failing to present any evidence on the claim in the Rule 32 hearing, the state court found that by failing to ask trial counsel any questions at the evidentiary hearing relating to the prosecutor's arguments, there was nothing to indicate that counsel's failure to object to the comments was anything more than a strategic decision or that the decision was unreasonable.  There is nothing to indicate that the state court's decision on this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  This claim is due to be DISMISSED.

**E.  Counsel failed to object properly to the prosecutor's improper use of subpoenas and failed to exhaust all available remedies by filing a writ of mandamus regarding the improper use of subpoenas.**

Fondren asserts that on February 26, 2003, the day before *voir dire* of the jury began, the district attorney's office issued subpoenas to take sworn testimony from the petitioner's father, Stanley Fondren, his mother, Diedra Fondren, and his wife, Julie Fondren. Trial counsel objected to the use of subpoenas as being improper, but the court overruled the objection, suggesting that counsel file a petition for a writ of mandamus to the Alabama Court of Criminal Appeals if the parties could not come to an agreement over deposing the three Fondrens.  Defense counsel did reach an agreement whereby they were allowed to be present at the depositions and make objections if necessary.  Fondren alleges that he was "specifically prejudiced by counsels' failure to properly object and file a writ of mandamus when the State used Stanley Fondren's deposition testimony to impeach Phillip Fondren's testimony during his trial, and to effectively undercut the theories of self-defense and provocation manslaughter."  *Petition*, Court Document 1 at 30.

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

> G. The claim that trial counsel were ineffective for failing to properly object to the State's use of subpoenas and for failing to file a writ of mandamus regarding the use of the subpoenas.
>
> In claim III.F on pages 45-47 of his consolidated petition, Fondren contends that trial counsel were ineffective for failing to properly object to the State's use of District Attorney's subpoenas and for failing to file a writ of mandamus regarding the use of the subpoenas. This claim is without merit and is denied.

> First, trial counsel did object to the prosecutor's use of District Attorney's subpoenas to question Fondren's family at trial. Second, the Court finds that trial counsel made a strategic decision to forgo filing a writ of mandamus. Trial counsel balanced the probability of losing the mandamus in the appellate courts against the benefit of being allowed to attend the questioning of Fondren's family members. Counsel then strategically decided that the best course of action was to compromise with the District Attorney's office. The result of this compromise was that trial counsel were allowed to attend the questioning of the Fondrens -- allowing them to protect Phillip Fondren's interest. The Court finds that this decision was not unreasonable. As such, this claim is without merit and is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 26-27.

The state court first found that counsel did object to the prosecutor's use of subpoenas to question Fondren's family.[4] The state court further found that counsel's decision not to file a petition for a writ of mandamus was not unreasonable, but was a strategic decision made after balancing the chances of losing on that petition with the compromise of being present during the questioning of the Fondrens. Clearly, this finding cannot be said to have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." This claim is due to be DISMISSED.

---

[4] Although Fondren actually states in his claim that counsel objected to the subpoenas, he phrased his claim as being that counsel failed to "properly object." However, he never indicated how counsel might have objected any better or differently from the way they did object. His claim seems to focus on the fact that counsel did not file a petition for a writ of mandamus.

31

**F.  Counsel had a conflict of interest created during the representation of Stanley Fondren, Deidra Fondren, and Julie Fondren.**

Fondren states that despite the fact that counsel were representing him, they also undertook to represent his father, his mother, and wife.  Fondren implies in his petition that counsel represented his family members in connection with the subpoenas for the state to take their sworn testimony.  *Petition*, Court Document 1 at 32.[5]  He claims that this created an actual conflict of interests since the state impeached Fondren with his father's sworn testimony.

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

> H. The claim that trial counsel were ineffective because of conflicts of interest.
>
> In claim III.G on pages 47-48 of his consolidated petition, Fondren contends that trial counsel were ineffective due to a conflict of interest created when, while representing him, counsel undertook the legal representation of Stanley Fondren, Deidra Fondren, and Julie Fondren regarding District Attorney's subpoenas they received compelling their sworn statements.
>
> The Court finds that this claim is without merit. Even if counsel had undertaken representation of Stanley Fondren, Deidra Fondren, and Julie Fondren in relation to the District

---

[5]  Fondren cites C.R. 159-164 in support of his statement that "counsel undertook the representation of his father, mother and wife."  Although these particular pages are missing from the trial record filed by the respondents (and provided to the respondents by the petitioner himself), the index to the clerk's record on direct appeal (Court Document 16-1 at 4) indicates that pages 159 through 164 are three motions to quash, presumably the defendant's motions to quash the subpoenas issued to his family members.  The court notes, however, that it seems clear from the actual depositions of Fondren's family members that defense counsel represented only the defendant with respect to the depositions and not any of Fondren's family members.  *Deposition of Deidra Fondren*, Court Document 16-6 at 1-25; *Deposition of Stanley Fondren*, Court Document 16-6 at 26-54; *Deposition of Julie Fondren*, Court Document 16-6 at 55 through Court Document 16-7 at 69.

Attorney's subpoenas -- a fact of which there was not evidence presented in the Rule 32 hearing -- the Court finds that there was no conflict of interest.  Stanley Fondren, Deidra Fondren, and Julie Fondren's interests were not adverse to that of Phillip Fondren. *Wynn v. State*, 804 So. 2d 1122, 1131 (Ala. Crim. App. 2000). As such, the Court finds that there was no conflict of interest. Therefore, this claim is without merit and is denied.

Furthermore, this claim is denied because Fondren failed to meet his burden of proof at the Rule 32 hearing. Ala. R. Crim. P. 32.3. Fondren failed to present any evidence that would establish that representing his family while representing him created a conflict of interest, nor did he present any evidence that would establish prejudice under *Strickland*. Therefore, this claim is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at page 27.

The state court found that even if counsel had represented the other Fondren family members in relation to the subpoenas or their deposition testimony, there was no conflict of interests because their interests were not adverse to the petitioner's interests.  The court further found that Fondren had not presented any evidence to establish that he was prejudiced.[6]  Clearly, this finding cannot be said to have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  This claim is due to be DISMISSED.

---

[6] Phillip Fondren argues that he was prejudiced when, in order to impeach Phillip's testimony and to destroy his defense, the state used his father's deposition testimony where the father testified that Phillip told him that he went to find the victim to "whip his ass."  However, the court notes that had the state not opted to depose Stanley Fondren, the state certainly would have required him to testify at trial, where he most likely would have given the same information in front of the jury.

33

**G. Counsel failed to object to the state's use of a juror to demonstrate how the shooting might have occurred.**

Fondren's final claim is that counsel were ineffective for failing to object to the prosecutor using a juror to demonstrate how the shooting might have occurred.[7]   He contends that:

> The demonstration went well beyond drawing inferences and was pure speculation having no factual basis whatsoever, and consequently, it deprived Mr. Fondren a fair trial due to prosecutorial misconduct.  It was also improper contact with a juror.  In essence, the prosecutor was ingratiating himself with the juror and making a member of the jury a participant in the presentation of the State's closing argument, which was highly improper.  This is nothing short of having the juror participate in a shooting event reconstruction, but only reconstructing the State's theory of the shooting.  A juror assisting in this type of demonstration is particularly damaging in light of trial counsel's failure to retain an appropriate expert to show that the prosecutor's theory as demonstrated with the assistance of a juror was physically impossible.

---

[7]  During the state's closing statement, the following occurred:

The defendant can't explain it.  He says I don't know how this happened.  I don't know how he got shot.  Do you remember when I asked him that?  I said how in the world could this happen with this door up here 50 inches or 51 or whatever it was inches high, how in the world could you shoot through there and hit a man 36 inches above his right sole with the bullet going on?  You remember that.  "I don't know. I don't know."

Well, how do you do it?  I'll tell you.  It's consistent with our evidence.  We know that he's more than four feet away.  We know that because there's no soot or stippling on that particular pair of pants that he was wearing.  We know that the bullet went in at 36 inches.  That's no problem.  You could do that from a window.  The problem is how is it elevated from the entrance to the hip area two and a half inches?

Hold your hand out, sir, right there if you would.  Point toward me.  Right there.  This man shoots through me right here.  It's going straight through, wouldn't it?  Now, point through it.  It's going straight through here.  It's going to go right through my hip, isn't it?  What if I'm doing this (indicating)?  What if I do this (indicating)?  What if he hits me right here, where is it going to go out?  It's going to go out my left hip a little bit higher than the entrance is.  Isn't it?

*Respondents' Exhibit B-2*, Court Document 16-29 at pages 9-10.

*Petition*, Court Document 1 at 33.

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

> K. The claim that trial counsel were ineffective for failing to object when the prosecutor used a juror to demonstrate how the shooting might have occurred.
>
> In Claim III.J on pages 53-54 of his consolidated petition, Fondren contends that trial counsel were ineffective for not objecting when, during closing arguments, the prosecutor used a juror to demonstrate how the shooting might have taken place.
>
> This claim is denied. The Court finds that Fondren failed to present any evidence at the Rule 32 hearing that would establish prejudice under *Strickland*. Ala. R. Crim. P. 32.3. Furthermore, the Court finds that the prosecutor's request that a juror hold his hand a certain way as part of a demonstration had no effect on the jury's deliberations. Thus, there is no probability, much less a reasonable probability, that an objection to the prosecutor's demonstration would have altered the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Consequently, this claim is without merit and is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at page 30.

The state court found that there was no prejudice from counsel's failure to object to the prosecution asking the juror to hold his hand a certain way as part of a demonstration, since there was nothing to indicate that it had affected the juror's deliberations. Clearly this finding cannot be found to have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." Thus, this claim is due
to be DISMISSED.

## 2.  INEFFECTIVE ASSISTANCE OF COUNSEL

Alternatively, the magistrate judge concludes that each of the petitioner's ineffective
assistance of counsel claims is due to be dismissed on the merits.  To establish ineffective
assistance of counsel, Fondren must show both incompetence and prejudice: (1) he must show
that "counsel's representation fell below an objective standard of reasonableness," and (2) he
must show that "there is a reasonable probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88, 694.

> Because a petitioner's failure to show either deficient performance or
> prejudice is fatal to a *Strickland* claim, a court need not address both *Strickland*
> prongs if the petitioner fails to satisfy either of them.  *See Windom v. Sec'y,
> Dep't of Corr.*, 578 F.3d 1227, 1248 (11th Cir. 2009) (*quoting Strickland*, 466
> U.S. at 697, 104 S. Ct. 2052).  As a result, a court may resolve whether the
> petitioner established prejudice as a result of counsel's errors without first
> considering the adequacy of his counsel's performance.  *Id.*; *see also McClain
> v. Hall*, 552 F.3d 1245, 1251 (11th Cir. 2008) ("We may decline to decide
> whether the performance of counsel was deficient if we are convinced that [the
> petitioner] was not prejudiced").

*Kokal v. Sec'y, Dept. of Corr.*, 623 F.3d 1331, 1344-45 (11th Cir. 2010).

Fondren has failed to establish that he was prejudiced by any of counsel's alleged
inadequacies.  That is, he has not demonstrated that there is a reasonable probability that, but
for counsel's alleged errors, the result of the proceeding would have been different.[8]  Because

---

[8]  In fact, the petitioner has not established that there is even the slightest chance that had
counsel not committed the alleged errors, the result of his trial would have been different.  Further,
to the extent that Fondren even alleges that he suffered prejudice as a result of counsel's performance,

Fondren was not prejudiced by the alleged errors of counsel, his ineffective assistance of counsel claims fail, and there is no need to address deficiency.[9]

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, the magistrate judge recommends that the respondents' motion for summary judgment be GRANTED and that the petition for a writ of habeas corpus be DISMISSED.

Any party may file specific written objections to this report within fourteen (14) days of the date it is filed in the office of the Clerk. Any objections filed must specifically identify the findings in the magistrate judge's recommendation to which the objections pertain. Frivolous, conclusive, or general objections will not be considered by the District Court. Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). A copy of the objections must be served upon all other parties to the action.

---

his contentions are conclusory and speculative at best.

[9] By not discussing the *Strickland* deficiency prong, the court does not imply that there is any merit to Fondren's claims that counsel were deficient. It is simply unnecessary since the petitioner has failed so clearly to establish prejudice.

37

The Clerk is DIRECTED to serve a copy of this Report and Recommendation upon counsel for the petitioner and counsel for the respondents.

DONE this 27th day of June, 2011.

Robert R. Armstrong, Jr.
United States Magistrate Judge