FILED
2012 Aug-20  PM 02:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP FONDREN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:08-CV-2089-SLB-RRA |
| | ) | |
| RICHARD ALLEN, Commissioner of | ) | |
| the Alabama Department of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This cause is now before the court on a Petition for Writ of Habeas Corpus by Prisoner in State Custody Under Sentence of Life Without the Possibility of Parole, filed November 6, 2008, pursuant to 28 U.S.C. § 2254. (Doc. 1.)[1] Petitioner Phillip Fondren was convicted of capital murder in Circuit Court of Calhoun County, Alabama, and sentenced to life in prison without the possibility of parole. In his Petition, Fondren asserts a total of thirteen grounds for granting his writ. The Magistrate Judge issued a Report and Recommendation, which recommends dismissing the Petition. Fondren filed Objections to the Report and Recommendation as to three grounds. Upon consideration of Fondren's Objections, the Report and Recommendation, as well as the court's record, the court finds that the Petition is due to be conditionally granted in part and denied in part.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I.  THE OFFENSE CONDUCT

The following summary of the evidence relevant to the offense is taken from the opinion of the Alabama Court of Criminal Appeals on direct appeal.  (*See* doc. 4-9.)

> The facts adduced at trial indicate the following:  On December 7, 2001, after having heard rumors that his wife had had sexual relations – perhaps involuntarily – with the victim before she and Fondren had married.  Fondren and his wife were at a local gas station when she saw the victim.  When he determined the source of his wife's obvious discomfort, Fondren decided to pursue the victim.  As the victim left the gas station, Fondren, too, pulled out of the gas station and began to follow the victim.  Fondren tailgated the victim at 80 m.p.h., flashing his headlights and trying to encourage the victim to pull over to the side of the road, to no avail.  Fondren then took his wife home and returned to the street where he had seen the victim turn off from the tailgating incident.  Fondren found the victim at the victim's uncle's house and pulled up to the end of the driveway.  Yelling and arguing ensued, with the victim standing at the end of his uncle's driveway, Fondren in his truck parked at the end of the driveway in the street, and the victim's girlfriend looking on.  Fondren tried to convince the victim to go someplace else to settle their differences, but the victim refused.  Fondren drove away, but returned, and the argument continued.  The victim approached Fondren's car in an apparently menacing fashion, and Fondren shot the victim in the abdomen with a rifle he kept in the floorboard of the truck during deer hunting season.  The victim died from the gunshot wound.  Fondren claimed that he thought he saw the victim drawing a weapon from the waistband of his pants.  The victim's girlfriend testified that, during the altercation, the victim had retrieved from under the seat of his car a "little metal bar," approximately one foot long, with "a little bit of rubber on it" and maybe a handle.

(Doc. 4-9 at 1-2 [citation omitted].)  According to Pugh's girlfriend, Pugh had removed his shirt in preparation of fighting Fondren, and that he "had retrieved from under the seat of his car a 'little metal bar,' approximately one foot long, with 'a little bit of rubber on it' and maybe a handle. had .  (Doc. 7-15 at 34-35; 70-71, 73.)

Fondren testified as follows:

A.  [Pugh] was standing there . . . making all kind of monkey motions at me, come on, you know.  And he stepped up to run like a –

Q.  Towards you?  Describe what motion he made when you said he –

A.  When somebody goes from standing there to coming towards you quick, how they go.  He reached in his waistline, and he had something stuck in his waistline.

Q.  What was he doing when you saw him reach at his waistline?

A.  Tried to pull it out.

Q.  Did you see what it was?

A.  I seen just a handle, just black.

Q.  Then what did you do?

A.  I picked up my rifle that was laying in my seat up, and I shot.

(Doc. 7-20 at 17-18.)

## II.  <u>PROCEDURAL HISTORY</u>

On March 7, 2003, Phillip Fondren was found guilty of capital murder, in violation of Ala. Code § 13A-5-20(a)(18).[2]   He was sentenced to life without parole.   Fondren

_____

[2]In response to Fondren's conviction, the Alabama Legislature entered a Resolution stating that Ala. Code § 13A-5-40(a)(18) was intended to reach only gang-related drive-by killings.  The Resolution states:

WHEREAS, in the early 1990's there was a public outcry against so called drive-by shootings that were murder committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle which murders were gang-related or intended to incite public terror or alarm; and

WHEREAS, in response to the foregoing concerns, the Legislature in

3

---

1992 passed Act 92–601 of the 1992 Regular Session (Acts 1992, p. 1247), amending Section 13A-5-40, Code of Alabama 1975, to, among other things, add a subdivision (18) to make murder committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle a capital offense; and

WHEREAS, Section 13A-5-40(18) has been interpreted by prosecutors and the courts to apply to murders committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle even if the fact that the murder weapon was fired from within the vehicle was not related to the commission of the offense and the murder was not gang-related; and

WHEREAS, the Legislature is aware of the case of State of Alabama v. Fondren, (Calhoun County CC 02–600) in which Fondren was convicted of capital murder for violating Section 13A-5-40(18) because the victim was shot by Fondren while Fondren was in a vehicle although there was no evidence that the motor vehicle was an instrumentality or otherwise involved in the shooting or that the shooting was gang-related.  In this case, the victim approached the defendant's motor vehicle while the defendant was parked. The fact that the defendant was sitting in his vehicle was in no way related to the commission of the offense; now therefore,

BE IT RESOLVED BY THE LEGISLATURE OF ALABAMA, BOTH HOUSES THEREOF CONCURRING, That in passing Act 92–601, it was the intent of the Legislature in adding subdivision (18) to Section 13A-5-40 of the Code of Alabama 1975, was that the provision would apply only to murders committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle if the motor vehicle was in some manner an instrumentality or otherwise involved in the murder.

BE IT FURTHER RESOLVED, That the Legislature urges the Attorney General and district attorneys to charge with violating Section 13A-5-40(18) only those individuals who commit murder by or through the use of a deadly weapon fired or otherwise used within or from a vehicle as provided above.

BE IT FURTHER RESOLVED, That the Legislature urges the Court of Criminal Appeals of Alabama or the Alabama Supreme Court, or both, to

4

appealed his conviction and sentence to the Alabama Court of Criminal Appeals.  On April 23, 2004, that court affirmed Fondren's conviction and sentence in an unpublished Memorandum Opinion.  The Supreme Court of Alabama denied his Petition for Writ of Certiorari.

Following the Supreme Court's denial of his petition for writ of certiorari on direct appeal, Fondren filed a petition for relief from judgment pursuant to Rule 32 of the Alabama Rules of Criminal Procedure on August 11, 2005.  The circuit court entered an order dismissing Fondren's petition on November 20, 2006.  Fondren appealed from the decision denying his Rule 32 petition, and on October 26, 2007, the Alabama Court of Criminal Appeals affirmed the Rule 32 court's decision.  On August 8, 2008, the Alabama Supreme Court denied Fondren's petition for writ of certiorari.

---

review at the earliest opportunity the interpretation of Section 13A-5-40(18) and hold that it applies only to those individuals who commit murder by or through the use of a deadly weapon fired or otherwise used within or from a vehicle if the vehicle is an instrumentality or otherwise involved in the murder.

2006 Ala. Act 2006-642 (H.J.R. 575).

The resolution does not have the effect of law.  "[The Alabama Supreme Court] gives effect to the intent of the legislature as expressed in the plain, unambiguous language of the statute.  A resolution is not a law but merely the form in which the Legislature expresses an opinion.  The Legislature has no power to make laws by resolution." *Ex parte Catlin*, 72 So. 3d 606, 608 (Ala. 2011)(Cobb, C.J., concurring specially)(internal citations and quotations omitted); *Shuttlesworth v. Birmingham Bd. of Ed. of Jefferson County*, 162 F. Supp. 372, 381 (N.D. Ala. 1958)(a joint resolution "does not have the force and effect of law").

5

Shortly thereafter, on November 6, 2008, Fondren filed a Petition for Writ of Habeas Corpus by Prisoner in State Custody under Sentence of Life Without Parole.  (Doc. 1.)

## III.  <u>THE SCOPE OF FEDERAL HABEAS REVIEW</u>

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 780 (2011). "Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources.  Those resources are diminished and misspent, however, and confidence in the writ and the law it vindicates undermined, if there is judicial disregard for the sound and established principles that inform its proper issuance." *Id*. "The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Id*. at 783.

Pursuant to 28 U.S.C. § 2254(a), a federal district court is prohibited from entertaining "[a]n application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court" unless the petitioner alleges "he is in custody in violation of the Constitution or laws or treaties of the United States."  In other words, this court's review of habeas claims is limited to federal constitutional questions.  Claims pertaining solely to questions of state law fall outside the parameters of this court's authority to provide relief under § 2254.  Thus, unless otherwise expressly stated, use of the word 'claim' in this opinion presupposes a claim of federal constitutional proportion.

When Congress enacted the AEDPA, it limited the circumstances under which a habeas petitioner could obtain relief.  Indeed, under the AEDPA, a petitioner is entitled to relief on a federal claim only if he shows that the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]  28 U.S.C. § 2254(d); s*ee also Brown v. Payton*, 544 U.S. 133, 141 (2005); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Williams v. Taylor*,  529 U.S. 362, 404 (2000); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  "Moreover, a state court's factual determinations are presumed

_____

[3]Section 2254(d) provides:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

correct unless rebutted by clear and convincing evidence." *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005)(citing 28 U.S.C. § 2254(e)(1)).

"A state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.  We have held that a state court need not even be aware of our precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them."   *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003)(internal quotations and citations omitted).  "Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."  *Bell v. Cone*, 543 U.S. 447, 455 (2005).

"A decision that does not rest on procedural grounds alone is an adjudication on the merits, regardless of the form in which it is expressed." *Williams v. Allen*, 598 F.3d 778, 797 (11th Cir. 2010)(internal quotations and citation omitted).  Section 2254(d) requires that "any claim that was adjudicated on the merits in State court proceedings" be accorded deference in the federal courts.  *See* 28 U.S.C. § 2254(d).

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

The reasons for this approach are familiar.  Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.  It disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority.

Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions.

*Harrington*, 131 S. Ct. at 786-87 (internal citations and quotations omitted).

A state court's adjudication of a claim will be sustained under § 2254(d)(1), unless it is "contrary to" clearly established, controlling Supreme Court precedent, or it is an "unreasonable application" of that law.  These are two different inquiries, not to be confused, nor conflated, as the Supreme Court explained in *Williams*:

Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. at 404 (emphasis in *Williams*).

The statute limits the source of "clearly established Federal law" to "holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  A state-court determination can be "contrary to" clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id*. at 405.  Likewise, a state-court determination can be an "unreasonable application" of clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id*. at 407.  Whether a particular application of Supreme Court precedent is "reasonable" turns on whether the application of Supreme Court precedent at issue was "objectively unreasonable."  Therefore, the question is not whether the state court "correctly" decided the issue, but whether its determination was "reasonable," even if incorrect.  *See Bell*, 535 U.S. at 694.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (internal citations and quotations omitted).

## IV.  <u>THE OBJECTIONS</u>

**A.  FONDREN OBJECTS TO THE REPORT AND RECOMMENDATION THAT HIS PETITION BE DISMISSED AS TO HIS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL BASED ON TRIAL COUNSEL'S FAILURE TO REQUEST A PROPER JURY CHARGE ON CAPITAL MURDER FOR SHOOTING**

**FROM WITHIN A VEHICLE WHEN PROVOCATION MANSLAUGHTER WAS PROPERLY ASSERTED AND FAILURE TO OBJECT TO THE IMPROPER CHARGE ON CAPITAL MURDER THAT DID NOT INCLUDE THE NECESSARY ELEMENT OF THE STATE'S BURDEN TO PROVE THE ABSENCE OF PROVOCATION – CLAIM A, (doc. 1 ¶¶ 36-48).**

### 1.    The Constitutional Standard for Ineffective Assistance of Counsel

Fondren claims that his trial counsel were constitutionally ineffective.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  *Strickland*, 466 U.S. at 686.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.  The Supreme Court has noted the difficulty in succeeding on an ineffective assistance claim in a § 2254 case:

> "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. ___, ___, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel

11

is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; see also *Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., ___, 129 S. Ct. [1411,] 1420[, 173 L. Ed. 2d 251 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is **any** reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S. Ct. at 788 (emphasis added).

### a.    The performance prong

"To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Id.* at 787 (quoting *Strickland*, 466 U.S. at 688). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). "The

challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id*. (quoting *Strickland*, 466 U.S. at 687).   The effectiveness or ineffectiveness of counsel is evaluated by consideration of the totality of the circumstances "from counsel's perspective at the time." *Id*. at 789 (quoting *Strickland*, 466 U.S. at 689).

### b.    The prejudice prong

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. at 787 (quoting *Strickland*, 466 U.S. at 694).   "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id*. (quoting *Strickland*, 466 U.S. at 693).   "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id*. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S.___, ___, 130 S. Ct. 383, 390, 175 L. Ed. 2d 328 (2009) (per curiam) (slip op., at 13); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052.  Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id*., at 696, 104 S. Ct. 2052.  This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052.  The likelihood of

13

a different result must be substantial, not just conceivable.  *Id.*, at 693, 104 S. Ct. 2052.

*Id.* at 791-92.

> **2.     Claim A – Trial Counsel Was Constitutionally Ineffective Because They Failed to Request a Jury Charge on the State's Burden to Prove the Absence of Heat of Passion Beyond a Reasonable Doubt and Failed to Object to the Trial Court's Failure to Give Such a Charge.**

With regard to Fondren's claim of ineffective assistance of counsel based on his trial counsel's failure to request a proper instruction and failure to object to an improer instruction based on the trial court's failure to charge on the State's burden to prove an absence of heat of passion, the Report and Recommendation states:

> There is nothing in the record to support a finding that the court's finding that Fondren had not established prejudice under *Strickland* "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Thus, this claim is due to be DISMISSED.  [footnote]

> > [Footnote]  Furthermore, it is clear that Fondren has not met the *Strickland* requirement of showing that he was prejudiced by counsel's failure to request a different jury charge or object to the charge that was given.  There is nothing in the record to indicate that had the court charged differently, there is even a slight chance that the outcome of his trial would have been different.

(Doc. 20 at 12-13 and n.2.)  For the reasons set forth below, the court rejects the finding of the Report and Recommendation.

14

### a. Failure to Give a Negative Heat of Passion Jury Instruction Violated Fondren's Right to Due Process

The Report and Recommendation adopts the opinion of the Alabama Court of

Criminal Appeal, which held:

> Fondren did not establish that counsel's failure to request that the Court's capital murder jury instruction include a negative heat of passion element constitutes ineffective assistance of counsel. First, this Court notes that the Alabama Pattern Jury Instructions regarding Section 13A-5-40(a) does not list an absence of heat of passion element.[4]  Additionally, *Ex parte McGriff*, 908 So. 2d 1024 (Ala. 2004), was issued after Fondren's conviction. As such, the Court finds that trial counsels' [sic] failure to request a jury instruction with a negative heat of passion element was not objectively unreasonable. *Woods v. State*, 957 So. 2d 492 (Ala. Crim. App. 2006), *overruled on other grounds*, *Ex parte Woods*, 957 So. 2d 533 (Ala. 2006)(holding that counsel cannot be ineffective for failing to forecast changes in the law); *Inmin v. State*, 654 So. 2d 86, 88 (Ala. Crim. App. 1995).

(Doc. 20 at 9-10 [quoting doc. 4-7 at 5][footnote added].)

### i. Right to an Absence of Heat of Passion Provocation Jury Instruction Predated *McGriff*

This court notes that Fondren was entitled to a jury instruction regarding the State's

burden to prove – beyond a reasonable doubt – that Fondren was not provoked to shoot Pugh

by a sudden heat of passion based on Supreme Court precedent pre-dating his conviction by

over twenty years.  The Supreme Court has held, "Lest there remain any doubt about the

---

[4]The Court of Criminal Appeals is technically correct that the Pattern Jury Instructions for Capital Cases, *see Alabama Pattern Jury Instructions – Criminal*, 5-1 to 5-132 (3d ed. 1994), do not list the absence of heat of passion as an element.  However, the Pattern Jury Instructions do not include an instruction for capital murder pursuant to § 13A-5-40(a)(18), and injection of an issue regarding heat of passion under subsections (a)(1) through (a)(14) seems improbable.

constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every* fact necessary to constitute the crime with which he is charged." *Sandstrom v. Montana*, 442 U.S. 510, 520 (1979)(quoting *In re Winship*, 397 U.S. 358, 364 (1970))(emphasis added in *Sandstrom*).   Indeed, "the Due Process Clause **requires** the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Mullaney v. Wilbur*, 421 U.S. 684, 704 (1975)(emphasis added), *quoted in Ex parte McGriff*, 908 So.2d 1024, 1033 (Ala. 2004).   No reasonable jurist could disagree that, at the time the trial court instructed the jury, Fondren had a constitutional right under the Due Process Clause to have the jury charged on the State's burden to prove the absence of heat of passion provocation if the issue had been injected in the case.   The decision of Alabama Court of Criminal Appeal to the contrary is an unreasonable application of established Supreme Court precedent.

### ii.  An instruction on the State's burden to prove the absence of heat of passion was warranted under the facts of the case.

The record contains evidence that Fondren's wife, upon the occasion of seeing Pugh, told Fondren that Pugh had raped her before she and Fondren married.   Thereafter, Fondren followed and ultimately confronted Pugh.   According to Fondren, he and Pugh argued before Pugh charged at Fondren while reaching for what appeared to Fondren to be a weapon,[5] and

---

[5]Pugh's girlfriend testified that Pugh had taken a little silver bar with rubber on it from his car before approaching Fondren.   (Doc. 17-15 at 70-71, 73).

Fondren then shot Pugh with a rifle he kept in his truck.  Under these circumstances, a heat of passion manslaughter charge was warranted.  *See Hopper v. Evans*, 456 U.S. 605, 611-12 (1982) ("due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction").

The Alabama  Court of Criminal Appeals, quoting the Circuit Court's opinion, held that Fondren was not entitled to a charge on the absence of heat of passion because Fondren was the "***first aggressor*** who provoked Mr. Pugh [and] then shot him from the cover of his truck."  (Doc. 4-7 at 6 [emphasis added].)  It also noted:

> "Finally, the Court finds that a heat of passion instruction was not supported by any evidence presented at trial.  The facts presented at trial established that Fondren was the first aggressor.  He chased the victim to the victim's uncle's house.  (R. 612-14.)  He drove past the victim at his uncle's house.  (R. 621-622, 627.)  He then returned to the uncle's house and shot the victim.  (R. 629.)  There was no evidence that the victim was armed, that he was about to commit a serious felony, or that he was about to cause serious physical injury to Fondren.
>
> Clearly, Fondren was not provoked by Marcus Pugh.  He was the first aggressor who provoked Mr. Pugh then shot him from the cover of his truck. Under no theory of the facts presented at trial or of the facts established in the Rule 32 hearing was Fondren sufficiently provoked to entitle him to a heat of passion jury instruction.

(*Id*. at 6-7.)  Without any explanation, the Court of Criminal Appeals ignored evidence that, after the two men argued in the drive-way of the uncle's house, Fondren shot Pugh when Pugh charged at him with what appeared to be a weapon.

The United States Supreme Court has "upheld the constitutionality of the following Alabama standard as applied in capital cases:  a lesser included offense instruction should

be given if  there is any reasonable theory from the evidence which would support the

position."  *Ex parte Julius*, 455 So. 2d 984, 986 (Ala. 1984)(quoting *Hopper v. Evans*, 456

U.S. 605, 611 (1981)(quoting *Fulghum v. State*, 277 So. 2d 886, 890 (Ala. 1973)))(internal

quotations omitted).  Alabama recognizes "legal provocation[ ] sufficient to reduce murder

to manslaughter . . . when the accused is assaulted or faced with an imminent assault."

*Rogers v. State*, 819 So. 2d 643, 662 (Ala. Crim. App. 2001)(citations omitted).

The law in Alabama is as follows:

> Mere words, no matter how insulting, never reduce a homicide to manslaughter.  Manslaughter is the unlawful killing of a human being without malice; that is, the unpremeditated result of passion-heated blood – caused by a sudden, sufficient provocation.  And such provocation can, in no case, be less than an assault, either actually committed, or menaced under such pending circumstances as reasonable to convince the mind that the accused has cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given.  ***Thus, the mere appearance of imminent assault may be sufficient to arouse heat of passion***.  To constitute adequate legal provocation, it must be of a nature calculated to influence the passions of the ordinary, reasonable man.  Other than discovered adultery, courts have reached different conclusions as to what factual situations are embraced within this doctrine.  As the commentary to § 13A-6-3, Code of Alabama 1975, indicates, "What constitutes adequate legal provocation is not defined but remains, as previously, for judicial interpretation.  The trial court must, as a preliminary question, decide as a matter of law whether offered evidence of provocation has any tendency to prove mitigating circumstances; when so construed and admitted, the questions of sufficient provocation and cooling time are then solely for the jury."  This court has previously addressed this issue and held that whether heat of passion was sufficiently proven was for the jury to determine.  Such has long been the law of this state.

*Cox v. State*, 500 So. 2d 1296, 1298 (Ala. Cr. App. 1986)(internal quotations and citations omitted; emphasis added); *see also Alabama Pattern Jury Instructions – Criminal* at 6-9.[6]

Evidence that Fondren was the "first aggressor" may negate a claim of self defense under Alabama law,[7] but this fact does not preclude Fondren "from showing the absence of any one or more of the elements constituting each degree of homicide charged in the indictment, including particularly intention and malice." *Sashington v. State*, 325 So. 2d 205, 209 (Ala. Crim. App. 1975)(citing *Byrd v. State*, 57 So. 2d 388 (Ala. 1952); *Reeves v. State*, 65 So. 160 (Ala. 1914)); *see also Smith v. State*, 11 So. 2d 466, 470 (Ala. App. 1942)("Again, voluntary manslaughter differs from homicide which the law deems excusable because committed in self defense in that in the one case there is apparently necessity for self

---

[6]The Pattern Jury Instructions provide:

> Mere words, no matter how insulting, never reduce murder to manslaughter.  The provocation can, in no case, be less than an assault, either actually committed or menaced.  The assault must be of such a nature as to reasonably convince the mind that the accused had cause for believing, and did believe, that he would be presently assaulted and that he struck, not in consequence of the previously formed design, general or specific, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given.

*Alabama Pattern Jury Instructions – Criminal* at 6-9 (3d ed. 1994).

[7]*See* Ala.Code § 13A-3-23(c)(2)("[A] person is not justified in using physical force [in self-defense] if : . . . (2) He or she was the initial aggressor, except that his or her use of physical force upon another person under the circumstances is justifiable if he or she withdraws from the encounter and effectively communicates to the other person his or her intent to do so, but the latter person nevertheless continues or threatens the use of unlawful physical force.").

preservation to kill the aggressor, and in the other there is no necessity at all.").   The Alabama Court of Criminal Appeals finding that the facts of this case do not support an absence of heat of passion/sudden provocation instruction is clearly erroneous and unreasonable.

> **iii.   *Alabama Pattern Jury Instructions – Criminal* contain an instruction on the State's burden to prove the absence of sudden heat of passion.**

The Alabama Court of Criminal Appeals also held that Alabama's Pattern Jury Instructions did not include an instruction for the State's burden to prove the absence of heat of passion/provocation.   Although the Alabama Pattern Jury Instructions contain a number of instructions for capital murder committed in violation of § 13A-5-40(1)-(14), it does not contain any specific charge for a capital murder under § 13A-5-40(a)(18).   *See generally Alabama Pattern Jury Instructions – Criminal* at 5-1 to 5-132.   Nevertheless, such a charge is included in the pattern instructions dealing with "Intentional Murder with Provocation Defense," in violation of Ala. Code § 13A-6-2(b).   *See Alabama Pattern Jury Instructions – Criminal* at 6-8 to 6-9.

Section 13A-5-40(a)(18) provides, "The following are capital offenses:  . . .  (18) Murder committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle."  Ala. Code. 13A-5-40(a)(18).  "Murder" as used in Ala. Code § 13A-5-40(a)(18) "mean[s] murder as defined in Section 13A-6-2(a)(1), but not as defined in Section 13A-6-2(a)(2) and (3)."  Ala. Code § 13A-5-40(b).   Therefore, "murder" as used § 13A-5-

40(a)(18) means, "With intent to cause the death of another person, he or she causes the death of that person or of another person." *Id.*; Ala. Code § 13A-6-2(a).  It does not include reckless murder, Ala. Code § 13A-6-2(a)(2)("Under circumstances manifesting extreme indifference to human life, he or she recklessly engages in conduct which creates a grave risk of death to a person other than himself or herself, and thereby causes the death of another person.)," or felony murder, Ala. Code § 13A-6-2(a)(3)("He or she commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another participant if there be any, causes the death of any person.").  Also, "A person does not commit murder under subdivision[ ] (a)(1) . . . of [§ 13A-6-2] if he or she was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself."  Ala. Code § 13A-6-2(b).

     As a result, Alabama's Pattern Jury Instructions for "Intentional Murder with Provocation Defense," provides the following jury instruction:

>      A person commits the crime of murder if he causes the death of another person, and in performing the act or acts which caused the death of that person, he intends to kill that person . . . .  ***A person does not commit murder, however, if he was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself***.

To convict, the State must prove beyond a reasonable doubt each of the following elements of murder:

(1)  That (name of deceased) is dead;

(2)  That the defendant (name of defendant) caused the death of (name of deceased)  by (state the alleged act, e.g., shooting) him;

(3)  That is committing the act(s) which caused the death of (name of deceased) the defendant acted with intent; and

**(4)  That the defendant was not lawfully provoked to do the act which caused the death of the deceased by sudden heat of passion.**

A person acts intentionally when it is his purpose to cause the death of another person.

Lawful provocation means that the defendant was moved to do the act which caused the death of the deceased by a sudden heat of passion and before there had been a reasonable time for the passion to cool and reason to reassert itself.  The defendant must have been provoked at the time he did the act; that is, he must have been deprived of self-control by the provocation which he received.  The state of mind must be such that the suddenly excited passion suspends the exercise of judgment, but it is not required that the passion be so overpowering as to destroy volition.  A killing in sudden passion, excited by sufficient lawful provocation, is manslaughter only.  The law presumes that the passion disturbed the defendant's reasoning and led him to act regardless of the admonition of law.

If you find from the evidence that the State has proved beyond a reasonable doubt each of the above elements of the offense of murder, as charged then you shall find the defendant guilty of murder.

If you find that the State has failed to prove beyond a reasonable doubt any one or more of the elements of the offense of murder, then you cannot find the defendant guilty of murder.

. . .

22

[Use if Appropriate]  Mere words, no matter how insulting, never reduce murder to manslaughter.  The provocation can, in no case, be less than an assault, either actually committed or menaced.  The assault must be of such a nature as . . . reasonably to convince the mind that the accused had cause for believing, and did believe, that he would be presently assaulted and that he struck, not in consequence of the previously formed design, general or specific, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given.

*Alabama Pattern Jury Instructions – Criminal* at 6-8 to 6-9 (emphasis added).  Therefore, the finding of Court of Criminal Appeals that the Alabama Pattern Jury Instructions did not require the trial court to instruct on the absence of sudden heat of passion provocation was wrong – so wrong that no reasonable jurist would have found (1) the facts did not support a charge of sudden provocation/heat of passion because Fondren was the first aggressor, or (2) the Alabama Pattern Jury Instruction did not include a charge on the State's burden to prove, beyond a reasonable doubt, the absence of a sudden heat of passion provocation to convict Fondren of intentional murder.

### iv.  The jury instructions given by the trial court did not include or adequately cover the State's burden to prove an absence of heat of passion provocation.

The trial court's jury instruction did not include a charge that the state was required to prove the absence of heat of passion in order to convict Fondren of capital murder.  The court stated in its charge:

Now, again, I have read the indictment to you, but, again, the defendant, Mr. Fondren, is charged by the indictment with Capital Murder.  Alabama law is provided by section 13A-5-40(a)(18) [which] states that a person commits Capital Murder if he commits what would otherwise constitute the offense of murder, but does so by or through the use of a deadly weapon fired or

23

otherwise used within or from a motor vehicle.  In other words, as the law applies to the case before you, what distinguishes the ordinary felony offense of murder from capital murder as charged is that a murder committed by a person by or through the use of a deadly weapon fired or other wise used from or within a motor vehicle is deemed by law to be capital in nature.

Therefore, to convict the defendant in this case of Capital Murder, the State of Alabama would have to prove beyond a reasonable doubt each of the following elements of the charge:

First, that Marcus Pugh is dead; second, that the defendant intentionally caused the death of Marcus Pugh by shooting him with a rifle as alleged in the indictment; third, that in causing the death of Marcus Pugh, the defendant discharged the rifle from or within a motor vehicle.

Now, I've used some terms in there, and I'd like to define some of those terms to you.  First, murder.  Under our law, a person commits the crime of murder if with the intent to cause the death of another person, he causes the death of that person.  As used in this charge, motor vehicle is used in its ordinary sense and would include a pickup truck.

The terms "from or within" also are used in their ordinary sense and mean simply in performing the act or acts that culminate in the discharge of a rifle that is alleged to have caused the death of the victim in this case, the defendant was himself within or he acted from within his motor vehicle.

The term "intentionally" is define[d] as follows:  Our law says a person acts intentionally with respect – with respect to [a] result or to conduct that is described by a statute that defines an event when his purpose is to cause that result or to engage in that conduct.  In other words, a person acts intentionally in regard to the death of another person when it is his intent to cause that death.

Now, what a person intends cannot normally be proven by direct evidence.  Intent, like any other state of mind, must normally be proven by circumstantial evidence.  Therefore, you may consider all of the facts and circumstances surrounding this case in passing upon the defendant's intent at any given point in time that is material to your ultimate inquiry.

Further, ladies and gentlemen, you may infer in your sole discretion and only if you choose to do so that a person intends the natural and probable consequence of his conduct.

Now, under our law, the term "knowingly" is defined as follows:  Our law says that a person acts knowingly with respect to conduct or through a circumstance described by statute when he is aware that his conduct is of that nature or that the described circumstance exists.

(Doc. 7-23 at 46-49.)  Following this instruction the court charged the jury on self defense

as justification for the killing.  (*Id*. at 49-54.)  He then charged the jury on the lesser included

offense of manslaughter –

Now, as I told you, the principle charge contained in this indictment in writing is the charge of Capital Murder.  As I also told you at the beginning, this indictment also contains within it the lesser-included but unwritten charge of manslaughter.  After this case is submitted to you, *if you find that the State of Alabama has failed to prove the defendant guilty of Capital Murder beyond a reasonable doubt, you should go on to consider the lesser-included but unwritten charge of manslaughter*.

If you find that the State has failed to prove the defendant guilty beyond a reasonable doubt of the charge written in the indictment and that the defendant did not act in self-defense, and as I said, you should go on to consider the lesser-included but unwritten charge of manslaughter.

Under our law, it's provided that . . . a person commits the crime of manslaughter if he causes the death of another person under circumstances that would otherwise constitute murder except that he causes the death due to sudden heat of passion, falls [sic] by provocation recognized by law, and before a reasonable time for passion to cool and for . . . reason to reassert itself.  *To convict the defendant of manslaughter*, *the State would have to prove beyond a reasonable doubt* each of the elements of the offense, first, that Marcus Pugh is dead; second, the defendant, Phillip Fondren, caused the death of Marcus Pugh by shooting him with a rifle as alleged; third, Phillip Fondren, in committing the acts that caused the death of Marcus Pugh *acted*

*with intent*; and *fourth, that the defendant was* <u>*not*</u> *lawfully provoked by heat of passion to do the act that caused the death of Marcus Pugh.*[8]

The same definition of intentional applies here as I've previously given you in the charge. The term "lawful provocation" means that the defendant must have been moved to do the act that caused the victim's death by a sudden heat of passion and before there had been a reasonable time for the passion to cool and for reason to reassert itself. The defendant must have been provoked at the time he acted; that is, he must have been deprived of self-control by lawfully sufficient provocation which he actually received.

The state of mind under which the defendant acted must be such that the sudden excited passion suspends the exercise of judgment, though it is not required, that the provocation be of such degree that it is totally overpowering or destroys the volition. A killing in sudden heat of passion caused by sufficient lawful provocation is manslaughter because the law presumes that the reasonably aroused passion of lawful provocation disturbs the defendant's reasoning and led him to act in spite of the law's admonition.

Again, in passing upon the degree of the defendant's conduct, you must continue to consider what an average reasonable person would have done under the same or similar circumstances.

Again, mere words, no matter how insulting, never reduces a homicide to manslaughter. Such provocation can in no case be less than an assault either actually committed or menaced under such circumstances as would convince a reasonable mind that an assault was [imminent] and that the defendant himself actually believed that he would be presently assaulted if he did not act.

Again, the homicide must not be a result of a previously formed design on the part of the defendant, or if the defendant committed the act and caused the death of the deceased by a previously formed desire, then the homicide can never be manslaughter.

---

[8]This section of the court's instruction mirrors the Pattern Jury Instruction for intentional murder. *See Alabama Pattern Jury Instructions – Criminal* at 6-8 (To convict, the State must prove beyond a reasonable doubt each of the following elements of murder: . . . (4) That the defendant was not lawfully provoked to do the act which caused the death of the deceased by a sudden heat of passion.").

Now, our law says that a defendant comes into court clothed with [a] presumption of innocence as I told you.  A corollary to that is a defendant is never required to produce any evidence.  Of course, the defendant has produced evidence and testimony in this case, but the law never assigns to the defendant the burden of proof.

***Therefore, in regard to the defense of self-defense, whether it be to the capital charge or to the manslaughter charge, as an additional element of the State's burden in this case, the State would have to prove beyond a reasonable doubt that the defendant did not act in self-defense.***

(*Id*. at 54-59 [emphasis and footnote added].)

As set forth above, the trial court instructed the jury ***not*** to consider manslaughter if they found the State had established capital murder beyond a reasonable doubt.  Its instruction regarding the elements of capital murder did not require proof beyond a reasonable doubt that Fondren acted in the absence of a sudden heat of passion provocation. It did not tell the jury that sudden heat of passion would negate the intent required to  prove capital murder.  Indeed, the trial court actually instructed the jury that, to prove manslaughter, the State had to prove that Fondren "was ***not*** lawfully provoked by heat of passion" to shoot Pugh – in other words, the court charged the jury that to find manslaughter, they had to find the elements of intentional murder.  *Compare Alabama Pattern Jury Instructions – Criminal* at 6-8 *with* doc. 7-23 at 56-57.  The Pattern Instruction for manslaughter instructs the jury that, "[t]o convict" the defendant of manslaughter, "the State must prove beyond a reasonable doubt" that "the defendant was lawfully provoked to do the act which caused the death of the deceased by a sudden heat of passion before a reasonable time for the passion to cool and for reason to reassert itself."  *Alabama Pattern Jury Instruction – Criminal* at 6-13.

The court finds that Fondren had a constitutional right to have his jury instructed that the State had to prove the absence of heat of passion beyond a reasonable doubt in order to convict Fondren of capital murder. *Mullaney*, 421 U.S. at 704. The trial court failed to properly instruct the jury in violation of Fondren's right to due process. The Alabama court's decision that this failure to so instruct the jury was not error is contrary to clearly established Supreme Court precedent. Therefore, the next question is whether Fondren's trial counsel's failure to request and/or object to the jury instructions constitutes deficient performance well below an objective standard of reasonableness. *See Harrington*, 131 S. Ct. at 787.

### b. Fondren's trial counsel's performance was deficient.

Fondren's counsel testified at the Rule 32 hearing that "heat of passion" was Fondren's best defense. (Doc. 7-1 at 147.) Also, he testified that he had "tried to stay up on the case law and . . . Judge Monk's normal charges on certain things." (*Id*. at 146.) Nevertheless, he failed to request an instruction, or object to the failure to include an instruction, that the State had the burden of proving – beyond a reasonable doubt – the absence of provocation by a sudden heat of passion in order to convict Fondren of capital murder.

Failure to request an appropriate jury charge or to object to the improper charge was not reasonable conduct under the prevailing professional norms; "Sound trial strategy cannot contemplate the abdication of a lawyer's responsibility to participate on his client's behalf in the process of charging the jury." *See Daniel v. Thigpen*, 742 F. Supp. 1535, 1560 (M.D.

Ala. 1990)(Dubina, J.).  At the time of Fondren's trial, any, and every, reasonable attorney would have been aware that the jury was required to be charged that the State had the burden to prove the absence of provocation based on sudden heat of passion beyond a reasonable doubt when any reasonable theory from the evidence would support the position.  *See Mullaney*, 421 U.S. at 704; *In re Winship*, 397 U.S. 358, 361 (1970); *see also Clark v. Arizona*, 548 U.S. 735, 796-97 (2006)("The prosecution . . . must prove all elements of the offense beyond a reasonable doubt.  The shift in the burden on the criminal responsibility issue, while permissible under our precedent, cannot be applied to the question of intent or knowledge without relieving the State of its responsibility to establish this element of the offense.")(Kennedy, J., dissenting)(internal citations omitted).  Therefore, "[i]t is simply impossible for this [c]ourt to conclude that, under the circumstances," failure of Fondren's trial counsel to request an absence of heat of passion instruction or to object to the failure to give such an instruction "might be considered sound trial strategy."  *See Kuk v. State*, 602 So. 2d 1213, 1216 (Ala. Crim. App. 1992).

Indulging in all due deference to the Alabama courts, this court is convinced that the trial counsel's performance with regard to requesting a proper jury instruction regarding the State's burden to prove an absence of heat of passion provocation and objecting to the jury instructions as given was "outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, and no reasonable jurists could have found otherwise.

29

### c. Trial counsel's deficient performance prejudiced Fondren.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding, if the error had no effect on the judgment." *Id.* at 691. "Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 693.

In this case, the jury was instructed that the State had to prove beyond a reasonable doubt that Fondren intentionally killed Pugh by shooting him from his car. They were not instructed that, because Fondren had raised the issue of provocation by presenting evidence of a threat of an imminent assault by Pugh, the State had to establish, beyond a reasonable doubt, that Fondren was ***not*** provoked to shoot Pugh by a sudden heat of passion in order to convict Fondren on the capital count. A reasonable jury could have found Fondren's decision to chase Pugh and the argument at the uncle's house were spontaneous, springing from the chance encounter at the gas station; they could have found that Pugh started to move toward Fondren in a menacing way, they could have found that Fondren reasonably perceived Pugh was reaching for a weapon with which to assault him; and the jury could

30

have found that Fondren's conduct in grabbing the shotgun and shooting Pugh was reflexive – a fear reaction to threatened assault and a not a cold, intentional decision to kill Pugh. More importantly, the court finds that, considering all of the evidence and being properly instructed, there is a substantial likelihood that the jury "would have had a reasonable doubt respecting guilt" for capital murder.  *Strickland*, 466 U.S. at 695.

This court finds that reasonable jurists could not disagree that trial counsel's failure to request an instruction on the State's burden to prove the absence of a sudden heat of passion provocation beyond a reasonable doubt, and their failure to object to the instructions, prejudiced Fondren.

This court finds that the Alabama court's decision – that no error occurred when the trial court failed to instruct the jury on the State's burden to prove the lack of heat of passion provocation  – is contrary to established Supreme Court precedent.  *See Mullaney*, 421 U.S. at 704.  Moreover, the Alabama court's decision that Fondren's counsel was not ineffective for failing to request such a charge and/or failing to object to the lack of such a charge is an unreasonable application of *Strickland* and *Harrington*.  Reasonable jurists could not agree that Fondren's trial counsel satisfied the *Strickland* standard for effective assistance of counsel.

Fondren's objection to the Report and Recommendation is **SUSTAINED**, and the court **REJECTS** the Report and Recommendation.  Claim A of Fondren's Petition for Writ of Habeas Corpus is due to be conditionally granted.

31

## B.  FONDREN'S REMAINING OBJECTIONS

The court notes:

"Out of 'deep concern over the piecemeal litigation of federal habeas petitions,'" we held in *Clisby* [*v. Jones*, 960 F.2d 925 (11th Cir. 1992),] that the district courts must "resolve all claims for relief raised in a petition for writ of habeas corpus pursuant to [§ 2254], regardless [of] whether habeas relief is granted or denied." *Clisby*, 960 F.2d at 935-36.  When a district court fails to address all of the claims in a habeas petition, we 'will vacate the district court's judgment without prejudice and remand the case for consideration of all remaining claims.'  *Id*. at 938."

*Taylor v. Hertzel*, 429 Fed. Appx. 850, 850-51 (11th Cir. 2011).

Therefore, the court will address Fondren's remaining objections.

**1.  Fondren Objects to the Dismissal of the Claim That Counsel Was Ineffective for Failing to Retain an Appropriate Expert to Assist in Presenting His Theory of Defense and to Assist in Properly Challenging the State's Theory of Prosecution in That They Failed to Retain an Appropriate Expert to Develop and Present Ballistics Evidence That Would Have Shown the Passenger Side Door of Fondren's Truck Was Open at the Time of the Shooting – Claim B.1., (doc. 1¶¶ 49-56).**

Fondren objects to the Report and Recommendation's rejection of his claim that, "The trial court's determination of whether trial counsel was ineffective for failing to retain an appropriate expert to develop and present ballistic evidence that would have shown the passenger side door of Fondren's truck was open at the time of the shooting was 'objectively unreasonable' and incorrect."  (Doc. 22 at 19 [citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)].)

The Report and Recommendation states:

32

Fondren contends that trial counsel were "deficient for failing to consult an appropriate expert when the defense was self-defense and provocation manslaughter and the appropriate expert could have assisted in properly developing and presenting those theories." *Petition*, Court Document 1 at 14-15. He further claims that "counsel made an inadequate pass at attempting to develop and present evidence that the passenger side door of Mr. Fondren's truck was open at the time of the shooting even though it was clear that this was critical to the theories of self-defense and provocation manslaughter, as well as necessary in countering the State's theory of the shooting," and that a "properly qualified expert would have assisted counsel in presenting evidence supporting the position that the door must have been open." *Id*. at 15.

When Fondren raised the same claim on appeal from the denial of his Rule 32 petition, the Alabama Court of Criminal Appeals affirmed the denial of the claim, finding as follows:

> 1.  The claim that trial counsel were ineffective for failing to obtain a ballistics expert.

> In claim III.C.1 on pages 16-19 of his consolidated petition, Fondren contends that trial counsel were ineffective for failing to retain the services of a ballistics expert to assist counsel in developing the defense's theory of self-defense by developing evidence to support the theory that the victim opened the passenger side door of Fondren's truck prior to the shooting.

> The Court finds that Fondren failed to present evidence at the Rule 32 hearing that would establish that counsel were ineffective for failing to elicit the aid of an expert to support a theory that the victim had opened the door of Fondren's truck prior to the shooting.  In the Rule 32 hearing, Fondren presented the testimony of John Kilbourn.  Kilbourn testified that, in his opinion, the passenger-side door of Fondren's truck must have been open when Fondren shot Pugh.  Kilbourn, however, did not specifically state how he came to that opinion.  Furthermore, Kilbourn could not have determined that Fondren did not open the door himself.  In sum, Kilbourn's testimony was insufficient to establish that there is a reasonable probability that, had counsel retained an expert in firearms, the outcome of his trial would have been different.

33

Furthermore, the Court finds that Kilbourn's opinion was not based on the facts of this case. Part of his opinion that the door must have been open when Pugh was shot was based on the trajectory of the bullet through Pugh's body. Kilbourn, however, did not take into account the fact that Pugh moved his body – flinched – just prior to being shot. The Court finds that Kilbourn's failure to take into account the fact that Pugh moved prior to being shot discredits his opinion that the door must have been opened based on the trajectory of the bullet through Pugh.

Furthermore, trial counsel testified that they independently examined the crime scene. During this examination, they used measurements and strings to recreate the bullets trajectory at the crime scene. From that examination, counsel determined that it was possible for the truck door to be closed when the shot was fired. Fondren failed to produce any evidence that would establish that counsels' [sic] investigation into the trajectory of the bullet and investigation into the open door theory was unreasonable. He also failed to establish that counsel unreasonably relied on their investigation of this theory in determining that a firearms expert would not be necessary or helpful. Consequently, Fondren did not establish deficient performance under *Strickland*.

Additionally, Fondren failed to present any evidence at the Rule 32 hearing that would establish that, had trial counsel retained a ballistics or a firearms expert, the outcome of his trial would have been different. Consequently, Fondren did not meet his burden of proof.

In short, Fondren failed to produce evidence at the Rule 32 hearing that would establish that trial counsels' [sic] decision not to retain a ballistics or a firearms expert was objectively unreasonable or that he was prejudiced under *Strickland*. Consequently, he did not meet his burden of proof, and this claim is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 8-10.

34

Fondren maintains that the state court's decision was an unreasonable application of federal law.  In concluding that counsel was not deficient for failing to obtain a ballistics expert, the court found that the testimony of John Kilbourn would not have been particularly helpful to Fondren in proving self-defense, since he never specifically indicated how he arrived at his conclusion that the door must have been open, he had no way of knowing that Fondren was not the person who opened the door, and he failed to consider that the victim moved immediately before he was shot.  Then, after also considering that counsel's own investigation, in which they used measurements and strings to recreate the trajectory of the bullet, had determined that it was possible for the truck door to have been closed when the victim was shot, the court found that Fondren had not established that counsel's performance was objectively unreasonable.   The court concluded that Fondren had offered nothing, including the testimony of Kilborn, that established that if counsel had hired a ballistics expert, the outcome of his trial would have been any different.  Clearly, the state court's determination that Fondren failed to establish that counsel's performance was deficient or that he was prejudiced by counsel's performance cannot be said to have been objectively unreasonable.  Therefore, this claim is due to be DISMISSED.

(Doc. 20 at 13-16.)

Fondren objects to the recommendation that this claim be dismissed.  He argues, "Kilbourn's testimony demonstrates that with little effort trial counsel could have presented expert testimony to support the theory that the door was open." (Doc. 22 at 17.)  He contends trial counsel's performance was deficient and he was prejudiced by this deficient performance.

The court's "principal concern" in deciding whether Fondren's counsel were ineffective for failing to retain an appropriate expert is not whether counsel should have presented expert testimony; rather, it is "whether the investigation supporting counsel's decision not to introduce [expert testimony] *was itself reasonable.*"  *Wiggins v. Smith*, 539

U.S. 510, 523 (2003)(citing *Strickland*, 466 U.S. at 691)(emphasis in *Wiggins*). "In assessing counsel's investigation, [the court] must conduct an objective review of [counsel's] performance measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Id.* (quoting *Strickland*, 466 U.S. at 688, 689)(internal quotations and citations omitted).  The Supreme Court has held:

> Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, whether pretrial, at trial, or both.  There are, however, countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.  Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach.  It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it.

*Harrington*, 131 S. Ct. at 788-89 (quoting *Strickland*, 466 U.S. at 689)(internal quotations and citations omitted).

The Alabama courts found that Fondren had failed to establish that his trial counsel's performance was deficient, in part, because he had "failed to produce any evidence that would establish that counsel['s] investigation into the trajectory of the bullet and investigation into the open door theory was unreasonable," and he had "failed to establish that counsel unreasonably relied on their investigation of this theory in determining that a firearms expert would not be necessary or helpful."  (Doc. 4-7 at 9.)  Considering counsel's investigation, this court cannot find that all reasonable jurists would agree that, under the

36

circumstances, failure to employ an expert witness, like Kilbourn, was deficient performance at the time of Fondren's trial. "Reliance on the harsh light of hindsight to cast doubt on [the fairness of Fondren's trial] is precisely what *Strickland* and AEDPA seek to prevent." *Harrington*, 131 S. Ct. at 789.

Fondren's objection to the Report and Recommendation as to Claim B.1. is **OVERRULED**. The court **ADOPTS** the Report and Recommendation as to this claim; Claim B.1. of Fondren's petition will be dismissed.[9]

**2. Fondren Objects to the United States Magistrate Judge's Report and Recommendation to Deny His Ineffective Assistance of Counsel Claim That Trial Counsel Failed to Conduct Adequate Voir Dire and Move to Strike for Cause Prospective Jurors Who Stated in the Questionnaire That They Would Believe "A Law Enforcement Officer's Testimony Should Be Automatically Believed or Given Greater Weight than Other Witnesses Simply Because He (She) Is an Officer." – Claim C.1., (doc. 1 ¶¶ 65-66).**

Fondren contends:

In Fondren's case, twelve (12) prospective jurors stated in the questionnaire that they would "believe a law enforcement officer's testimony should be automatically believed or given greater weight than other witnesses simply because he (she) is an officer." Fondren's trial counsel, Randy Brooks, testified at the evidentiary hearing that "[a]t the time, we didn't think it would be sufficient grounds to strike them for cause. We felt we would have to use our preemptory challenges." (E.R. 117.) He conceded that the failure to strike for cause was not strategic. (E.R. 117.) Twelve prospective jurors stated that they would give more credence to the testimony of law enforcement than other witnesses and none were rehabilitated. [Footnote] Trial counsel were well aware that law enforcement would testify. They failed to strike jurors who have stated that they would side with the State's evidence and witnesses,

---

[9]Nothing in this opinion should be construed as reflecting the court's opinion as to whether Kilbourn's testimony should be offered by Fondren in the event he is retried.

which has been a valid ground for a successful ineffective assistance of counsel claim. *See State v. Terry*, 601 So. 2d 161 (Ala. Crim. App. 1992).

> [Footnote]:  Manuel Torres (C.R. 62), Doris Nannette Farr (C.R. 17), Joshua Lee Johnson (C.R. 31); Kevin Eugene Lynch (C.R. 36), Travis [Scott Merrill] (C.R. 38), Chris Dana Pasquinelli (C.R. 47), Martin Eugene Perry (C.R. 49), Jane Edwards Wheeler (C.R. 64), Brenda Leonora Williams (C.R. 66), Judith Roberts Young (C.R. 70), Kevin Lee Benefield (C.R. 6), Joe Van Houston (C.R. 28) . . . .

> Failure to strike for cause those jurors who stated that they would give more credence to the testimony of law enforcement was ineffective. Competent criminal defense counsel knows that one can strike for cause a juror who tends to favor the testimony of law enforcement.  That is a standard question asked during voir dire in any criminal case.  The trial court's and the Alabama Court of Criminal Appeal's failure to find counsel ineffective for failure to challenge or strike those jurors for cause is an "objectively unreasonable" application of *Strickland v. Washington*, 466 U.S. 668 (1984).

(Doc. 22 at 21-22.)

The court "evaluate[s] juror selection claims as [it] would any other *Strickland* claim." *Harvey v. Warden, Union Correctional Institution*, 629 F.3d 1228, 1243 (11th Cir. 2011)(citing *Baldwin v. Johnson*, 152 F.3d 1304, 1315-16 (11th Cir. 1998); *Smith v. Gearinger*, 888 F.2d 1334, 1337-38 (11th Cir. 1989)).

The Report and Recommendation found Fondren's claim of ineffective assistance of his trial counsel, based on their failure to strike for cause every member of the venire that stated, on a juror questionnaire, that they would believe a police officer because he was a police officer, to be without merit.  It states:

> Fondren asserts that counsel were ineffective for failing to move to strike for cause twelve prospective jurors who stated in the jury questionnaire

that they would believe a law enforcement officer's testimony over any other witness, simply because he is a law enforcement officer.  [Footnote]

> [Footnote]:  Of the twelve jurors mentioned by the petitioner, only one of them, Manuel Torres, actually served on the jury that convicted Fondren.  Although Doris Farr also indicated that she would believe a law enforcement officer's testimony over any other witness, simply because the witness was a law enforcement officer, she was an alternate juror and did not participate in the deliberations or have any part in the verdict.  *See Court Document 16-15* at p. 2 and *Court Document 16-29* at p. 70.

In denying this claim on the merits, the Alabama Court of Criminal Appeals found the following:

> 1.  The claim that counsel were ineffective for failing to adequately *voir dire* and move to strike for cause jurors who indicated in their questionnaires that they would give greater weight to the testimony of a law enforcement officer.

> In claim III.D.1 on pages 27-30 of his consolidated petition, Fondren contends that trial counsel were ineffective for failing to adequately question and have removed for cause those prospective jurors that indicated on their jury questionnaire that they 'believe[d] a law enforcement officer's testimony should be automatically believed or given greater weight than other witnesses simply because he (she) is an officer.'  This claim is denied.

> Fondren did not present any evidence in the Rule 32 hearing that would establish this claim.  First, trial counsel testified that he used a numbering system to determine whether he wanted a juror to remain on the jury.  In that numbering system, counsel stated that there might be a question that could disqualify a juror; however, if the juror answered favorably on other questions, counsel might strategically decide not to strike the juror.  Fondren did not ask counsel any questions relating to their decision not to strike any specific jurors and did not present any evidence that would establish that counsels' [sic] decision

39

not to strike certain jurors for cause was anything other than a strategic decision based on favorable answers that made the juror very appealing to the defense.  Furthermore, he failed to present any evidence that would establish prejudice under *Strickland*.  He did not establish that the jurors to which he complains could not have been rehabilitated.

Because Fondren failed to present evidence that would establish that counsels' [sic] performance was deficient or that he was prejudiced by the failure to move to strike for cause jurors that stated that they would believe law enforcement over lay witnesses, he did not meet his burden of proof.  Therefore, this claim is denied.

*Respondents' Exhibit A-1*, Court Document 4-7 at pages 15-16.

The state court found that Fondren failed to establish that counsel's failure to strike the twelve prospective jurors for cause was deficient or that he was prejudiced by counsel's failure to strike the twelve for cause.  There is nothing in the record to establish that this finding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Thus, this claim is due to be DISMISSED.

(Doc. 20 at 22-23.)

Of the venire members identified by Fondren, only Torres sat on his jury.  Torres – as well as Benefield, Lynch, Pasquinelli, and Young– responded "No" to the question, "Do you believe a law enforcement officer's testimony should be automatically believed or given greater weight than other witnesses <u>simply because</u> he (she) is an officer?  (Doc. 19-1 at 56 [Torres]; doc. 19-3 at 26 [Benefield]; doc. 19-6 at 86 [Lynch]; doc. 19-8 at 11 [Pasquinelli];

doc. 19-10 at 101 [Young].)[10]   Because Torres, the only juror named by Fondren, did not

purport to believe a law enforcement officer's testimony just because he is a law enforcement

officer the court finds Fondren cannot establish prejudice based on any failure to strike

Torres.

"Because empaneled jurors are presumed to be impartial, a petitioner must show the

selection process produced a biased juror to satisfy *Strickland*'s prejudice standard."  *Mack

v. Buss*, No. 11-CV-61328-COHN, 2011 WL 6102885, *8 (S.D. Fla. Nov. 14, 2011)(citing

*Ingram v. Zant*, 26 F.3d 1047 (11th Cir. 1994); *Raulerson v. Wainwright*, 753 F.2d 869 (11th

Cir. 1985)).  "At most, the record establishes that [some venire members] might have brought

a bias to the courtroom door," as illustrated by their answers on the initial questionnaire; "it

does not demonstrate that [the empaneled jurors] could not leave [their] bias outside the

door."  *Depree v. Thomas*, 946 F.2d 784, 790 (11th Cir. 1991).

Fondren's objection to the Report and Recommendation is **OVERRULED**.  The court

**ADOPTS** the Report and Recommendation; Claim C.1. will be dismissed.

### V..  CLAIMS TO WHICH FONDREN HAS NOT OBJECTED

In his Petition, Fondren raises the following issues:

---

[10]Of the twelve venire members identified by Fondren, only seven actually answered
"Yes" to the question, "Do you believe a law enforcement officer's testimony should be
automatically believed or given greater weight than other witnesses simply because he (she)
is an officer?"  (*See* doc. 19-2 at 101 [Farr]; doc. 19-5 at 71 [Houston]; doc. 19-6 at 11
[Johnson]; doc. 19-7 at 26 [Merrill]; doc. 19-8 at 40 [Perry]; doc. 19-10 at 41 [Wheeler]; doc.
19-10 at 71 [Wheeler].)

1.  Claim B.2. – Counsel was ineffective by consulting and retaining an unqualified expert who falsified his credentials.  (Doc. 1 ¶¶ 57-59.)

2.  Claim B.3. – Counsel was ineffective by failing to interview state law enforcement officers prior to or during trial.  (*Id*. ¶¶ 60-61.)

3.  Claim B.4. – Counsel was ineffective by failing to consult an expert who could testify as to Fondren's incomplete memory of the events surrounding the shooting.  (*Id*. ¶¶ 62-63.)

4.  Claim C.2. – Counsel was ineffective by failing to request to strike for cause the  juror employed by the funeral home that handled the burial of the victim.  (*Id*. ¶ 67.)

5.  Claim C.3. – Counsel was ineffective by failing to request to strike for cause the jurors who stated in the questionnaire that they would be "less tolerant or understanding" of a person using alcohol.  (*Id*. ¶¶ 68-69.)

6.  Claim C.4. – Counsel was ineffective by failing to review the jury questionnaires and adequately follow up when jurors failed to answer truthfully during voir dire.  (*Id*. ¶¶ 70-71.)

7.  Claim D – Counsel was ineffective by failing to object when the prosecutor knowingly and in bad faith argued facts not in evidence, gave his personal opinions, improperly appealed to emotion, and had a juror participate in closing argument by demonstrating the shooting.  (*Id*. ¶¶ 72-78)

8.  Claim E – Counsel was ineffective by failing to properly object to the prosecutor's improper use of subpoenas and failing to exhaust all available remedies by filing a writ of mandamus regarding the improper use of subpoenas.  (*Id*. ¶¶ 80-84.)

9.  Claim F – Counsel had a conflict of interest created during the representation of Fondren's parents and his wife.  (*Id*. ¶¶ 85-88.)

10.  Claim G – Counsel was ineffective by failing to object to the state's use of a juror to demonstrate how the shooting might have occurred.  (*Id*. ¶ 89.)

Although Fondren did not object to Magistrate Judge's recommended dismissal of these claims, the court has carefully reviewed and considered *de novo* the Report and Recommendation and other matters in the court file.  Based on this review, the court herein **ADOPTS** the Report and **ACCEPTS** the Recommendation that Fondren's remaining claims be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that Fondren's Petition for Writ of Habeas Corpus by a Prisoner in State Custody Under Sentence of Life Without the Possibility of Parole, is due to be conditionally granted as to Claim A and denied as to all remaining grounds.  An Order denying in part and conditionally granting in part Fondren's Petition for Writ of Habeas Corpus, (doc. 1), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 20th day of August, 2012.


SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

43